OSCN Found Document:The Institute For Responsible Alcohol Policy v. State ex rel. Alcohol Beverage Laws Enforcement Comm.

 

 
 

 
 The Institute For Responsible Alcohol Policy v. State ex rel. Alcohol Beverage Laws Enforcement Comm.
2020 OK 5
Case Number: 118209
Decided: 01/22/2020
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2020 OK 5, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

THE INSTITUTE FOR RESPONSIBLE ALCOHOL POLICY, SOUTHERN GLAZER'S WINE AND SPIRITS OF OKLAHOMA, LLLP, J.B. JARBOE II, CENTRAL LIQUOR CO. L.P. d/b/a RNDC OKLAHOMA, JUSTIN NAIFEH, E. & J. GALLO WINERY, SUTTER HOME WINERY INC., d/b/a TRINCHERO FAMILY ESTATES, DIAGEO AMERICAS, INC., LUXCO, INC., RIBOLI FAMILY OF SAN ANTONIO WINERY, INC., JENNIFER BLACKBURN, d/b/a CELLAR WINE AND SPIRITS OF NORMAN, and DALE BLACKBURN d/b/a GRAND CRU WINE AND SPIRITS SUPERSTORE, Plaintiffs/Appellees,
v.
STATE OF OKLAHOMA, ex rel. ALCOHOLIC BEVERAGE LAWS ENFORCEMENT COMMISSION, and THE HONORABLE KEVIN STITT, GOVERNOR, in his official capacity, Defendants/Appellants,
and
BRYAN HENDERSHOT, individually, and d/b/a BOARDWALK DISTRIBUTION COMPANY, Intervenor/Appellant.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

The Honorable Thomas E. Prince, Trial Judge

Â¶0 Senate Bill 608 mandates that manufacturers of the top 25 brands of liquor and wine sell their product to all licensed wholesalers. Appellees, a group of liquor and wine wholesalers, manufacturers, retail liquor stores, and consumers, challenged Senate Bill 608 as unconstitutional, contending it was in conflict with Okla. Const. art. 28A, Â§ 2(A)(2)'s discretion given to a liquor or wine manufacturer to determine what wholesaler sells its product. The district court agreed and ruled Senate Bill 608 unconstitutional. Appellants appealed, and this Court retained the appeal.

DISTRICT COURT'S JUDGMENT AFFIRMED.

Mithun Mansinghani, Solicitor General, and Zach West, Assistant Solicitor General, Office of the Attorney General, Oklahoma City, Oklahoma, for Defendants/Appellants.

Thomas G. Wolfe, Heather L. Hintz, Fred A. Leibrock, and Martin J. Lopez III, Phillips Murrah P.C., Oklahoma City, Oklahoma, for Intervenor/Appellant.

Robert G. McCampbell, Amelia A. Fogleman, and Travis V. Jett, GableGotwals, Oklahoma City, Oklahoma, for Plaintiffs/Appellees.

D. Kent Meyers, Crowe & Dunlevy, P.C., Oklahoma City, Oklahoma, for Plaintiffs/Appellees.

Winchester, J.

Â¶1 The Oklahoma Legislature passed Senate Bill 608 ("SB 608") which mandates that liquor and wine manufacturers of the 25 top-selling brands must sell their products to all licensed Oklahoma wholesalers. Appellees, The Institute for Responsible Alcohol Policy; Southern Glazer's Wine & Spirits of Oklahoma, LLLP; J.B. Jarboe II; Central Liquor Co. L.P., d/b/a RNDC Oklahoma; Justin Naifeh; E. & J. Gallo Winery; Sutter Home Winery, Inc., d/b/a Trinchero Family Estates; Diageo Americas, Inc.; Luxco, Inc.; Riboli Family of San Antonio Winery, Inc.; Jennifer Blackburn, d/b/a Cellar Wine and Spirits of Norman; and Dale Blackburn, d/b/a Grand Cru Wine and Spirits Superstore (collectively "Distributors"),[1] challenged SB 608 as unconstitutional, arguing it conflicts with the recently passed Article 28A, Â§ 2(A)(2) of the Oklahoma Constitution (State Question 792).

Â¶2 The issues before the Court are (1) whether SB 608 is in conflict with Article 28A, Â§ 2(A)(2), and (2) whether SB 608 is a proper use of legislative authority under the anticompetitive provisions of the Oklahoma Constitution. For the reasons stated herein, we hold SB 608 is "clearly, palpably, and plainly inconsistent" with Article 28A, Â§ 2(A)(2)'s discretion given to a liquor or wine manufacturer to determine what wholesaler sells its product. See EOG Res. Mktg. v. Okla. State Bd. of Equalization, 2008 OK 95, Â¶ 13, 196 P.3d 511, 519. We further rule that SB 608 is not a proper use of legislative authority as Article 28A, Â§ 2(A)(2) is not in conflict with the Oklahoma Constitution's anticompetitive provisions. The district court did not err by granting Distributors' Motion for Summary Judgment and ruling SB 608 unconstitutional.

I. FACTS

Â¶3 Since the end of alcohol prohibition, Oklahoma has maintained strict control over the distribution of alcoholic beverages. See State ex rel. Hart v. Parham, 1966 OK 9, Â¶ 11, 412 P.2d 142, 147. Beginning in 1984, Oklahoma regulated alcohol pursuant to Article 28 of the Oklahoma Constitution, which created Appellant Alcoholic Beverage Laws Enforcement Commission ("ABLE Commission"). The centerpiece of this regulation still in place today is Oklahoma's three-tier system for alcohol distribution: alcohol manufacturers (first tier) can only sell to licensed Oklahoma wholesalers (second tier); licensed Oklahoma wholesalers (second tier) can only sell to licensed retailers (third tier); and licensed retailers (third tier) can only sell to consumers. This case involves the relationship between the first and second tiers under the recently passed Article 28A. Until recently, the top two tiers operated under a "forced sale clause" that required a manufacturer to sell its products to every licensed Oklahoma wholesaler. See Central Liquor Co. v. Okla. Alcoholic Beverage Control Bd., 1982 OK 16, Â¶ 4, 640 P.2d 1351, 1353 (discussing the forced sale clause). Now repealed Article 28 of the Oklahoma Constitution stated:

Provided, that any manufacturer . . . shall be required to sell such brands . . . to every licensed wholesale distributor who desires to purchase the same, on the same price basis and without discrimination . . . .

Okla. Const. art. 28, Â§ 3(A) (repealed Oct. 1, 2018).

Â¶4 In 2016, the Oklahoma Legislature passed a joint resolution to place State Question 792 on the November 2016 ballot. State Question 792 repealed Article 28 of the Oklahoma Constitution, replacing it with Article 28A and fundamentally changed how Oklahoma regulates the sale and distribution of alcohol. The people of Oklahoma approved State Question 792 by a 65.62% vote,[2] and it went into effect on October 1, 2018. The Legislature also passed companion legislation in Title 37A of the Oklahoma Statutes to create Oklahoma's new alcohol regulatory scheme. The key provision in Article 28A at issue here permits how a liquor or wine manufacturer can sell products to a licensed Oklahoma wholesaler:

A manufacturer . . . may sell such brands or kinds of alcoholic beverages to any licensed wholesaler who desires to purchase the same. Provided, if a manufacturer, except a brewer, elects to sell its products to multiple wholesalers, such sales shall be made on the same price basis and without discrimination to each wholesaler.

Okla. Const. art. 28A, Â§ 2(A)(2).[3]

Â¶5 After passage of State Question 792, Oklahoma's two largest wholesalers, Central Liquor and Jarboe Sales Company, each sold 49% of their respective businesses to the two largest national alcohol distributors, Southern Glazer's Wine & Spirits and Republic National Distribution Co. As a result, these two wholesalers--now known as Appellees Southern Glazer's Wine and Spirits of Oklahoma, LLLP and Central Liquor Co. L.P., d/b/a RNDC Oklahoma--obtained exclusive distribution contracts with the majority of liquor and wine manufacturers, including distribution of the top 25 brands at issue here.[4] The two largest wholesalers controlled the majority of all wholesale distribution in Oklahoma when Article 28A went into effect on October 1, 2018.

Â¶6 Intervenor/Appellant Bryan Hendershot, owner of Oklahoma's third-largest wholesaler, Boardwalk Distribution Company, and other wholesalers and liquor stores, advocated for a change to the statutory scheme. The Legislature took up what became SB 608:

Any wine or spirit product that constitutes a top brand, as defined in this section, shall be offered by the manufacturer for sale to every licensed wine and spirits wholesaler who desires to purchase the same on the same price basis and without discrimination or inducements.[5]

S.B. 608, 57th Leg., 1st Sess. (Okla. 2019) (codified as 37A O.S. Supp. 2019, Â§ 3-116.4). The Legislature passed SB 608, and Governor Stitt signed the bill on May 19, 2019. Id.

II. PROCEDURAL HISTORY AND ARGUMENTS

Â¶7 Distributors previously requested this Court exercise its original jurisdiction and either issue a writ of prohibition against enforcement of SB 608 or declaratory relief that SB 608 is unconstitutional. This Court declined to exercise its concurrent jurisdiction and transferred the case to district court.

Â¶8 The parties moved for summary judgment in district court. Distributors claimed that SB 608 directly conflicts with Article 28A, Â§ 2(A)(2), as SB 608 makes Article 28A, Â§ 2(A)(2)'s discretion to select a single wholesaler a nullity. Had Article 28A allowed the Legislature's actions here, Distributors contended Article 28A would have said "shall sell," which the now-repealed Article 28 had required, not "may sell." Appellants, ABLE Commission, Governor Kevin Stitt, and Bryan Hendershot, individually and d/b/a Boardwalk Distribution Center (collectively "the State"), filed a cross-motion for summary judgment and countered that Article 28A must be read in conjunction with the anticompetitive provisions of the Oklahoma Constitution, specifically Okla. Const. art. V, Â§ 44 and Â§ 51. The State further argued that Article 28A, Â§ 2(A)(2)'s phrase a manufacturer . . . may sell does give manufacturers discretion to sell to one wholesaler, but that discretion must give way where the Legislature passes a law otherwise.

Â¶9 Judge Prince granted Distributors' motion, ruling the clear and ordinary language of Article 28A, Â§ 2(A)(2) identifies an intent by the voters to give discretion to liquor and wine manufacturers to decide to sell to only one wholesaler. The district court held the language of SB 608 requiring manufacturers to sell to all wholesalers is "clearly, palpably, and plainly inconsistent with Article 28A," and therefore, unconstitutional. The State appealed. This Court retained the appeal.

III. STANDARD OF REVIEW

Â¶10 Summary judgment is properly granted when there are no disputed questions of material fact and the moving party is entitled to judgment as a matter of law. S. Tulsa Citizens Coal., L.L.C. v. Ark. River Bridge Auth., 2008 OK 4, Â¶ 10, 176 P.3d 1217, 1220. An appeal on summary judgment comes to this Court as a de novo review, as the matter presents only questions of law, not fact. In re Estate of Bell-Levine, 2012 OK 112, Â¶ 5, 293 P.3d 964, 966; Carmichael v. Beller, 1996 OK 48, Â¶ 2, 914 P.2d 1051, 1053. This Court assumes "plenary independent and non-deferential authority to reexamine a trial court's legal rulings." Kluver v. Weatherford Hosp. Auth., 1993 OK 85, Â¶ 14, 859 P.2d 1081, 1084.

IV. DISCUSSION

Â¶11 This Court is the final interpreter of Oklahoma's laws, including the Oklahoma Constitution. See Monson v. State ex rel. Okla. Corp. Comm'n, 1983 OK 115, Â¶ 7, 673 P.2d 839, 843. We are bound to follow the Oklahoma Constitution, and we cannot "'circumvent it because of private notions of justice or because of personal inclinations.'" Gurney v. Ferguson, 1941 OK 397, Â¶ 12, 122 P.2d 1002, 1004 (quoting Judd v. Bd. of Educ., 15 N.E. 2d 576, 584 (N.Y. 1938)). "In assessing the conformity of a challenged state statute to our fundamental law, we are guided by well-established principles. The Constitution is the bulwark to which all statutes must yield." Liddell v. Heavener, 2008 OK 6, Â¶ 16, 180 P.3d 1191, 1199.

Â¶12 The objective of construing the Oklahoma Constitution is to give effect to the framers' intent, as well as the people adopting it. Shaw v. Grumbine, 1929 OK 116, Â¶ 30, 278 P. 311, 315. When a challenge is limited to the Oklahoma Constitution, the Court looks first to its language, which if unambiguous, binds the Court. Id. Â¶ 0, 278 P. at 311 (Syllabus by the Court No. 5). "Every provision of the Constitution and statutes of Oklahoma is presumed to have been intended for some useful purpose and every provision should be given effect." Darnell v. Chrysler Corp., 1984 OK 57, Â¶ 5, 687 P.2d 132, 134; Cowart v. Piper Aircraft Corp., 1983 OK 66, Â¶ 5, 665 P.2d 315, 317 (holding "each portion of the Constitution was intended to be operative and not surplus language"). The Court, therefore, construes constitutional provisions "as a consistent whole in harmony with common sense and reason." Cowart, 1983 OK 66, Â¶ 4, 665 P.2d at 317. We will uphold a duly enacted statute unless it is "clearly, palpably and plainly" inconsistent with the Constitution. Lafalier v. Lead-Impacted Cmtys. Relocation Assistance Trust, 2010 OK 48, Â¶ 15, 237 P.3d 181, 188.

Â¶13 In determining whether SB 608 is in conflict with the Oklahoma Constitution, the key question before the Court is whether Article 28A, Â§ 2(A)(2) grants to liquor or wine manufacturers the discretion to select a single wholesaler free from legislative interference. A comparison of now-repealed Article 28, Â§ 3(A), Article 28A, Â§ 2(A)(2), and SB 608 is helpful for this discussion:

 
 
 
 Okla. Const. art. 28, Â§ 3(A) 

 (repealed Oct. 1, 2018)
 
 
 Okla. Const. art. 28A, Â§ 2(A)(2)
 
 
 S.B. 608, 57th Leg., 1st Sess. (Okla. 2019)
 
 
 
 
 Provided, that any manufacturer . . . shall be required to sell such brands . . . to every licensed wholesale distributor who desires to purchase the same, on the same price basis and without discrimination . . . .
 
 
 A manufacturer . . . may sell such brands or kinds of alcoholic beverages to any licensed wholesaler who desires to purchase the same. Provided, if a manufacturer, except a brewer, elects to sell its products to multiple wholesalers, such sales shall be made on the same price basis and without discrimination to each wholesaler.
 
 
 Any wine or spirit product that constitutes a top brand, as defined in this section, shall be offered by the manufacturer for sale to every licensed wine and spirits wholesaler who desires to purchase the same on the same price basis and without discrimination or inducements.
 
 
 

Â¶14 This Court must interpret constitutional provisions in conformity with their ordinary significance in the English language--given their commonly accepted and nontechnical meaning. See In re Initiative Petition No. 363, State Question No. 672, 1996 OK 122, Â¶ 33, 927 P.2d 558, 570. The clear and ordinary language of Article 28A, Â§ 2(A)(2) allows a liquor or wine manufacturer to select one or more than one wholesaler to distribute its product. The second sentence of the section provides: "a manufacturer . . . may sell such brands . . . to any licensed wholesaler who desires to purchase the same." May denotes that an action is permissive or discretional, and not mandatory. Shea v. Shea, 1975 OK 90, Â¶ 10, 537 P.2d 417, 418. The third sentence of Article 28A, Â§ 2(A)(2) further clarifies the second: "Provided, if a manufacturer . . . elects to sell its products to multiple wholesalers, such sales shall be made on the same price basis . . . ." By providing direction to manufacturers when they choose to sell to more than one wholesaler, Article 28A, Â§ 2(A)(2) implies that a manufacturer can also select only one wholesaler. The third sentence is purely conditional based on a manufacturer's decision to elect to sell to more than one wholesaler and forbids price discrimination when a manufacturer elects to do so. We must conclude then that a manufacturer can elect to sell to only one wholesaler.

Â¶15 An opinion by the Office of the Attorney General also supports this conclusion:

Thus, whereas both Article 28 of the Oklahoma Constitution and Section 533 of the Old Act required a manufacturer to sell its products to every wholesaler wishing to purchase them, Article 28A and Section 3-116 of the New Act permit a manufacturer to choose to sell its products to any or every wholesaler who wishes to distribute its products. Indeed, Article 28A explicitly leaves to the manufacturer's discretion whether to sell to more than one wholesaler. OKLA. CONST. art 28A, Â§ 2(A)(2) ("If a manufacturer, except a brewer, elects to sell its products to multiple wholesalers . . . .").

Question Submitted by: Harry "Trey" Kouri, III, Chairman, ABLE Commission, 2018 OK AG 6, Â¶ 11. Legislation passed after State Question 792 made the same determination that a manufacturer may select one wholesaler to the exclusion of all others. See 37A O.S. Supp. 2016, Â§Â§ 3-123(A)(1), 3-116 (repealed May 7, 2019).[6]

Â¶16 Constitutional construction requires the Court to garner the drafter's intent, as well as the people adopting it, from the plain language of the provision. Darnell, 1984 OK 57, Â¶ 5, 687 P.2d at 134; Shaw, 1929 OK 116, Â¶ 30, 278 P. at 315. The now repealed Article 28, Â§ 3(A) further clarifies what the Legislature, through a vote of the people, granted to all manufacturers in Article 28A, Â§ 2(A)(2)--the removal of the "forced sale clause" from both the Oklahoma Constitution and statutes and the ability to select a single wholesaler to the exclusion of all other licensed wholesalers.[7] For the Court to construe Article 28A in a vacuum without reference to the repealed Article 28 would turn a blind eye to what the public intended.

Â¶17 In contrast, SB 608 states that manufacturers shall sell the top 25 brands to every licensed wholesaler. Shall is usually "given its common meaning of 'must'. . . implying a command or mandate." Sneed v. Sneed, 1978 OK 138, Â¶ 3, 585 P.2d 1363, 1364. From its plain language, SB 608 modifies the alcohol distribution scheme by mandating that all manufacturers of the top 25 brands of liquor and wine--as determined by the ABLE Commission each quarter--sell those products "to every licensed wine and spirits wholesaler who desires to purchase the same on the same price basis and without discrimination or inducements." S.B. 608, 57th Leg., 1st Sess. (Okla. 2019) (codified as 37A O.S. Supp. 2019, Â§ 3-116.4). SB 608 thus infringes on a manufacturer's constitutionally granted discretion to select one wholesaler to the exclusion of all others, as it mandates that a manufacturer of a top 25 brand must sell to all wholesalers. We hold SB 608's infringement of Article 28A, Â§ 2(A)(2) is unconstitutional.

Â¶18 The second question before this court is whether SB 608 is a proper use of legislative authority under the anticompetitive provisions of the Oklahoma Constitution. The State contends that Article 28A, Â§ 2(A)(2) must be read in conjunction with the Oklahoma Constitution's provisions against anticompetitive markets, specifically Okla. Const. art. V, Â§ 44[8] and Â§ 51.[9] Taken to its logical conclusion, the State's argument that these constitutional provisions grant the Legislature broad powers to combat monopolies or anticompetitive markets confers to the Legislature broad power to overrule or amend another constitutional provision, here Article 28A. The State has pushed this argument too far. The entirety of the Oklahoma Constitution applies with equal force to statutes enacted pursuant to Okla. Const. art. V, Â§ 44 and Â§ 51. Cf. Liddell, 2008 OK 6, Â¶ 18, 180 P.3d at 1200 (rejecting the argument that Okla. Const. art. X, Â§ 8(A)(2) and Â§ 22's grant of legislative power to define assessment classifications justified an unconstitutional statute). The Oklahoma Constitution prevails over a conflicting statute, and where a statute violates one constitutional provision, another constitutional provision cannot save it.

Â¶19 The passage of Article 28A also confines those anticompetitive constitutional provisions. See, e.g., Naifeh v. State ex rel. Okla. Tax Comm'n, 2017 OK 63, Â¶ 14, 400 P.3d 759, 764 (examining other constitutional provisions to help define the constitutional provision at issue). Prior holdings of this Court instructed that if there is a conflict between a constitutional amendment and other, earlier passed, provisions of the Oklahoma Constitution, the more recent amendment prevails. See E. Okla. Bldg. & Constr. Trades Council v. Pitts, 2003 OK 113, Â¶ 10, 82 P.3d 1008, 1012; In re Initiative Petition No. 259, 1957 OK 167, Â¶ 23, 316 P.2d 139, 144; Adams v. City of Hobart, 1933 OK 646, Â¶ 0, 27 P.2d 595, 595 (Syllabus by the Court No. 2). Article 28A's change in the manufacturing-wholesaling distribution tier is the most recent constitutional change, and if there is a conflict, it controls over any other constitutional provision. See id.

Â¶20 We hold, however, that the plain language of Article 28A, Â§ 2(A)(2) is not in conflict with the anticompetitive provisions of the Constitution. See Okla. Const. art. V, Â§ 44 & Â§ 51. Article 28A, Â§ 2(A)(2)'s discretion allows liquor and wine manufacturers and wholesalers to have exclusive distributorships, and this Court has upheld exclusive distributorships as lawful. Crown Paint Co. v. Bankston, 1981 OK 104, Â¶ 13, 640 P.2d 948, 951 (finding an agreement between a manufacturer and a distributor setting up an exclusive territory within which the distributor will have exclusive rights to sell does not in itself violate antitrust provisions); Teleco, Inc. v. Ford Indus., Inc., 1978 OK 159, Â¶ 9, 587 P.2d 1360, 1363 ("It is, however, well settled that it is not a per se violation of antitrust law for a manufacturer or supplier to agree with the distributor to give him an exclusive franchise or distributorship, even if this means cutting off another distributor."). We, therefore, hold that SB 608 is not a proper use of legislative authority under the anticompetitive provisions of the Oklahoma Constitution.[10]

V. CONCLUSION

Â¶21 The Court must always presume that a law is constitutional unless "clearly, palpably, and plainly inconsistent with the Constitution." Lafalier, 2010 OK 48, Â¶ 15, 237 P.3d at 188. Here, SB 608 is clearly, palpably, and plainly inconsistent with Article 28A, Â§ 2(A)(2)'s grant of discretion to a liquor or wine manufacturer to determine what wholesaler sells its product.

Â¶22 This Court must uphold the will of the people of Oklahoma who voted to adopt Article 28A of the Oklahoma Constitution and open the market between the alcohol manufacturing and wholesaling tier--allowing those actors within the tier to make decisions without interference in a force-sale system. Only an amendment to the Constitution can change what the people enshrined. We, therefore, affirm the district court's holding SB 608 unconstitutional.

DISTRICT COURT'S JUDGMENT AFFIRMED.

Gurich, C.J., Darby, V.C.J., Winchester, Edmondson, JJ., and Reif, S.J., concur.

Kauger (by separate writing), Kane, JJ., Barnes, S.J. (by separate writing), and Goodman, S.J., dissent.

FOOTNOTES

[1] Appellees are a collection of wholesalers, their principal officers, liquor and wine manufacturers, two Oklahoma retail liquor stores, and consumers.

[2] See Official Results, Federal, State, Legislative and Judicial Races, General Election--November 8, 2016, Oklahoma State Election Board, http://ok.gov/elections/support/20161108_seb.html (last visited Nov. 13, 2019).

The ballot title for State Question 792 provided:

This measure repeals Article 28 of the Oklahoma Constitution and restructures the laws governing alcoholic beverages through a new Article 28A and other laws the Legislature will create if the measure passes.

The new Article 28A provides that with exceptions, a person or company can have an ownership interest in only one area of the alcoholic beverage business--manufacturing, wholesaling, or retailing. Some restrictions apply to the sales of manufacturers, brewers, winemakers, and wholesalers. Subject to limitations, the Legislature may authorize direct shipments to consumers of wine.

Retail locations like grocery stores may sell wine and beer. Liquor stores may sell products other than alcoholic beverages in limited amounts.

The Legislature must create licenses for retail locations, liquor stores, and places serving alcoholic beverages and may create other licenses. Certain licensees must meet residency requirements. Felons cannot be licensees.

The Legislature must designate days and hours when alcoholic beverages may be sold and may impose taxes on sales. Municipalities may levy an occupation tax. If authorized, a state lodge may sell individual alcoholic beverages for on-premises consumption but no other state involvement in the alcoholic beverage business is allowed.

With one exception, the measure will take effect October 1, 2018.

[3] Article 28A, Â§ 2(A)(4) provides the same direction to winemakers:

Winemakers either within or without this state may sell wine produced at their wineries to any licensed wholesaler who desires to purchase the wine; provided, that if a winemaker elects to sell the wine it produces to multiple wholesalers, then such sales shall be made on the same price basis and without discrimination to each wholesaler. In addition to its sales through one or more licensed wholesalers, a winemaker may be authorized to sell its wine as follows . . . .

[4] On July 15, 2019, the ABLE Commission published the top 25 brands of wine and liquor. Southern Glazer's Wine and Spirits of Oklahoma, LLLP is the exclusive distributor of fourteen of the top 25 brands. Central Liquor Co. L.P., d/b/a RNDC Oklahoma is the exclusive distributor of the other eleven top 25 brands.

[5] SB 608 also sets out how the ABLE Commission determines what liquor or wine brand constitutes a "top brand":

"Top brand" shall mean those brands constituting the top twenty-five brands in total sales of spirits and of wine by all wholesalers during the past twelve-month period, according to the records of the ABLE Commission as revised by the ABLE Commission quarterly. In order to allow the ABLE Commission to determine the top twenty-five brands of spirits and of wine, all wholesalers must submit to the ABLE Commission every sixty (60) days a sworn affidavit listing their top thirty brands of spirits and of wine in sales for the previous sixty (60) days, excluding sales to wholesalers.

Id. The ABLE Commission's list of the top 25 brands of wine and liquor is as follows:

 
 
 
 Barefoot Moscato
 
 
 Barefoot Pink Moscato
 
 
 Barton Vodka 80 Proof
 
 
 
 
 Beringer White Zinfandel
 
 
 Burnetts Vodka
 
 
 Crown Royal
 
 
 
 
 Evan Williams Black 7 Years
 
 
 Fireball Cinnamon Whiskey
 
 
 Franzia Chardonnay
 
 
 
 
 Franzia Chillable Red
 
 
 Franzia Crisp White
 
 
 Franzia Fruity Red Sangria
 
 
 
 
 Franzia Merlot
 
 
 Franzia Sunset Blush
 
 
 Franzia White Zinfandel
 
 
 
 
 Heaven Hill Vodka 80 Proof
 
 
 Jack Daniels Whiskey
 
 
 Jim Beam White 80 Proof
 
 
 
 
 Kentucky Deluxe Blend
 
 
 McCormick Vodka 80 Proof
 
 
 Seagrams 7 Crown Blend
 
 
 
 
 SKYY Vodka
 
 
 Svedka Vodka 80 Proof
 
 
 Titos Handmade Vodka
 
 
 
 
 Tvarscki Vodka 100 Proof
 
 Â 
 Â 
 
 

[6] For example, the Legislature prohibited price discrimination to wholesalers only "when that manufacturer has not designated a single wine and spirits wholesaler." Id. Â§ 3-123(A)(1). Similarly, the Legislature provided the post and adjust price-posting system would not apply to a manufacturer that has a designated wholesaler to sell its products in the state. Id. Â§ 3-116(D); Â§ 3-116.1(A).

[7] This Court has found that "[a]n amendment to a constitutional provision that has been judicially interpreted is presumed to have changed the existing law." Williams Nat. Gas Co. v. Perkins, 1997 OK 72, Â¶ 14 n.11, 952 P.2d 483, 489 n.11.

[8] Okla. Const. art. V, Â§ 44 provides:

The Legislature shall define what is an unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, and enact laws to punish persons engaged in any unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, or composing any such monopoly, trust, or combination.

[9] Okla. Const. art. V, Â§ 51 provides: "The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State."

[10] The plain language of SB 608 further shows that the statute is not an operation of the Legislature's power to combat anticompetitive markets pursuant to Okla. Const. art. V, Â§ 44. SB 608 does not define an unlawful restraint of trade nor does it set forth any punishment for those entities engaging in unlawful restraint of trade. Id. Further, SB 608 only deals with the top 25 brands of liquor and wine as determined by the ABLE Commission every quarter. To apply the State's argument beyond the top 25 brands specified in SB 608, the statute would allow for a restraint of trade on thousands of other brands of liquor and wine. If SB 608 was an anticompetitive measure, it would logically restrict anticompetition on all brands of liquor and wine.

KAUGER, J., with whom KANE, J. joins, dissenting:

Â¶1 The Oklahoma Legislature drafted the referendum in question. The very first sentence, (A)(1) provides that "[t]he Legislature shall enact laws providing for the strict regulation, control, licensing and taxation of the manufacture, sale, distribution, possession, transportation and consumption of alcoholic beverages, consistent with the provisions of this Article."[1] (Emphasis supplied.)

Â¶2 Subsection (A)(2) also addresses monopolies and common ownership between manufacturing, wholesaling and retailing tiers which is generally prohibited. A manufacturer is not permitted to sell in Oklahoma unless they go through an Oklahoma wholesaler. It also contains two sentences which are at the heart of this cause. A manufacturer and winemaker may sell to any licensed wholesaler who desires to purchase. Provided if the manufacturer or winemaker elects to sell to multiple wholesalers (more than one), the sales must be the same price basis and without discrimination to each wholesaler. (Emphasis supplied.)

Â¶3 A cursory reading of these sentences might appear to allow a manufacturer to elect to only sell to one wholesaler or sell to more than one. However, a provision that appears to allow the election to sell to only one is immediately followed by another provision which requires the same price basis to all and that prohibits no discrimination to each wholesaler. It does not say no price discrimination. Rather, it says the "same price basis" and "without discrimination." This implies that any discrimination, including price basis, is prohibited.

Â¶4 An immediate ambiguity appears. If one is allowed to sell to only one wholesaler and no others but is also required to sell without any discrimination, how can this provision be met? Selling only to one and no others is a form of discrimination. For example, if there is one manufacturer in the State, and five wholesalers and the manufacturer chooses to sell to only one, but is prohibited from discriminating against the others, how can this provision be satisfied?

Â¶5 To further complicate the matter, the same enactment also requires the Legislature to enact further laws as long as they do not conflict with the provisions. Yet, the provisions themselves are in conflict. How is it possible for the Legislature enact anything which doesn't conflict in some way with one or more of the conflicting directions within the provisions? The meaning of language in a statute is construed by courts as internally consistent and externally consistent with the constitution, i.e., the meaning of the statute's language is construed so that it does not contradict either itself or the constitution.[2]

Â 

Â¶6 While it may seem somewhat illogical, this is the framework with which we are faced in deciphering this cause. Consequently, our primary duty is to ascertain the intention of the framers, and of the people who adopted the same,[3] and construe it in such a way, if possible, that it does not contradict either itself or the constitution.[4] In such construction and determination, technical rules should be disregarded, and as a rule, a mean between a strict and liberal construction followed, and when ascertained, such intent must govern.[5] The same rule applies as to the intent of the Legislature in vitalizing such provisions and in enacting legislation to prevent corruption in making, procuring, and submitting initiative and referendum petitions.[6]

Â 

Â¶7 On its face, this voter approved referendum is expressly and clearly

aimed at: expanding a consumer's availability to purchase alcoholic beverages;

excluding industry monopolies in Oklahoma; and notifying voters that the Legislature will enact further laws governing such sales.

Â¶8 How do we know this? The actual resolution as codified in the Oklahoma Constitution,[7] addresses the Legislature's duties in several sections to enact furtherlaws regarding alcohol sales. It also directs the prohibition of discrimination, both based on price and otherwise.[8] The Final Ballot Title approved by the Attorney General[9] informed voters that this measure "repeals Article 28 of the Oklahoma Constitution and restructures the laws governing alcoholic beverages through a new Article 28A and other laws the Legislature will create if the measure passes." It also informed voters that the laws governing alcoholic beverages will be restructured for the Legislature to: authorize direct shipments to consumers of wine; create licenses; and designate days and hours when alcoholic beverages may be sold.[10]

Â 

Â¶9 It also expressly informs voters that it targets monopolies as well by providing that: "[t]he new Article 28A provides that with exceptions, a person or company can have an ownership interest in only one area of the alcoholic beverage business -- manufacturing, wholesaling, or retailing." It says absolutely nothing about whether a wholesaler will be allowed to sell to only one retailer or required to sell to multiple retailers.[11]

Â¶10 The title of the voter approved proposition notes that alcohol beverage laws will be governed by the new Article 28A and applicable laws. (Emphasis supplied.)[12] It also expressly targets monopolies by stating that "[c]ommon ownership between tiers of the alcoholic beverage business is prohibited, with some exceptions." It states the same language as the body of the measure, that the Legislature is required to enact laws to regulate alcoholic beverages; prescribe licenses; and designate days and hours for alcoholic beverage sales. It says absolutely nothing about whether a wholesaler will be allowed to sell to only one retailer or required to sell to multiple retailers. The gist notes that the measure is to allow grocery and convenience stores to sell wine and high-point beer.[13]

Â 

Â¶11 This Court has long held that the purpose of the gist, along with the ballot title, is to "prevent fraud, deceit, or corruption in the initiative process." The gist must explain the proposal's effect without extending or describing policy arguments for or against the proposal."[14] When the resolution, the title, and the gist are read collectively with each other, and with other constitutional provisions such as art. 2 Â§32[15], art. 5 Â§Â§44[16] and 51,[17] and art. 9 Â§45,[18] as mentioned in Barnes, S.J., dissent, it clearly appears that the Legislature was primarily concerned with three things:

1) monopolies forming, especially between different types of alcoholic beverage businesses;

2) preventing discrimination, whether based on price or any thing else

related to alcoholic beverage sales; and

3) the retention of the Legislature's authority to regulate the sale of alcoholic

beverages in Oklahoma.

Â¶12 When the resolution, the title, and the gist, are read collectively, it is apparent that the voters were voting on these same three things. The voters were not notified about whether to allow a manufacturer to sell to only one wholesaler and the ballot title certainly did not inform voters of it in the voting booth. The ballot title said:

This measure repeals Article 28 of the Oklahoma Constitution and

restructures the laws governing alcoholic beverages through a new Article 28A and other laws the Legislature will create if the measure passes.[19]

Â 

Â¶13 One need only look to what happened after the measure was adopted to see that the voter approved measure was not intended to be interpreted in such a manner as sales to one wholesaler which results in discrimination among other wholesalers. Two large wholesalers now control a large part of the market, and they do not compete with one another regarding the top 25 best-selling brands. Currently, 14 of the top 25 brands are exclusively distributed by one distributor and the other 11 brands are distributed by another.

Â¶14 The result of the current market? Smaller wholesalers and consequently retailers, are being left with limited options to purchase, and limited options to offer consumers the most popular brands, if they can purchase them at all.[20] According to affidavits in the record, smaller wholesalers are suffering financially and find it nearly impossible to compete. At least one was forced to close.[21] With limited options to purchase the most popular brands, retailers are "hamstrung and face decreased service quality, lower supply and higher prices and fees.[22] Deliveries have dropped and rural retailers have suffered.[23]

Â 

Â¶15 Once this disparate result became apparent, the Legislature swiftly responded and passed Senate Bill 608 to, consistent with the purpose of the ballot title, the gist and the voter approved measure, modify the way in which the sale of alcoholic beverages occurred. The bill does several things related to this cause. It defines what a "brand" is and what "brand extension" means.[24] It defines "top brand" as those brands constituting the top twenty-five brands in total sales of spirits and of wine by all wholesalers during the past twelve month period. [Of the top 25 brands from July 1, 2018 to June 30, 2019, 10 were wines and the rest were spirits.] It defines a 'manufacturer' as a brewer, distiller, winemaker, rectifier or bottler of any alcoholic beverage and its subsidiaries, affiliates and parent companies.

Â¶16 The legislation also creates a new law which requires "manufacturers" to offer to sell the 'top brands' to every licensed wine and spirits wholesaler who desire to purchase at the same price basis and without discrimination or inducements. The question before the Court is whether this legislation is consistent with the State Question adopted by the voters.

Â¶17 Accordingly, for the statute to be "consistent" internally, and externally, with the newly enacted Article 28A, and the purpose for which it was enacted it must be interpreted to mean that:

manufacturers and winemakers must offer the "top brand" to all, without discrimination as to price basis or inducements.

Under this construction, there is no conflict between the constitutional provision and the statute. The statute merely adds a requirement that, of the brands offered for sale, top brands must be included. That is it. That is what this whole controversy boils down to ---- offering the top brands to everyone.

Â¶18 When a constitutional provision expressly provides that the legislature shall enact laws for further licensing, regulation, taxation, sale and distribution of alcoholic beverages such as this one does, the legislatures function is to enact laws necessary to carry the provision of the amendment into effect. To, in a manner of speaking, provide the meat on the bones of the provision.[25] Actions of the Legislature are presumed to be constitutional unless it is shown beyond a reasonable doubt that the Oklahoma Constitution or the Constitution of the United States expressly prohibit the Legislative action.[26]

Â 

CONCLUSION

Â¶19 The Legislature's authority to impose such a requirement comes from the constitutional provision itself wherein it requires the Legislature to enact regulatory laws regarding alcoholic beverage sales. The crux of this cause is that the proposed Legislation does nothing more than adding a requirement that the top brands be made available to everyone. Adding a top brand requirement to what manufacturers and winemakers have to offer does not change the function, the meaning, or the mandate of the voter approved provision. Consequently, the law should be upheld as constitutional. If anything, it furthers the purpose of the legislation regarding sales within the heavily regulated alcoholic beverage industry and levels the playing field.

Â¶20 Article 28A of the Oklahoma Constitution repeals Article 28, restructures the laws governing alcoholic beverages, and clearly provides that the Legislature will create other laws if the measure passes.[27] The measure is nothing more than a robust antitrust/antidiscrimintion bill. Perhaps portions were inartfully drafted or could have been drafted better. Nevertheless, interpreting the measure to bestow an absolute right for manufacturers to sell to a single wholesaler, regardless of the consequence and discriminatory fallout, collectively ignores the ballot title, the gist, and the resolution. Such an interpretation is fundamentally contrary to everything the measure seeks to restrict. The district court grant of summary judgment should be vacated.

FOOTNOTES

[1] State Question No. 792, Legislative Referendum No. 370, as adopted at election held on Nov. 9, 2016, is now Art. 28A Â§2 of the Oklahoma Constitution and it provides in pertinent parts:

A. The Legislature shall enact laws providing for the strict regulation, control, licensing and taxation of the manufacture, sale, distribution, possession, transportation and consumption of alcoholic beverages, consistent with the provisions of this Article. Provided:

1. a. there shall be prohibited any common ownership between the manufacturing, wholesaling and retailing tiers, unless otherwise permitted by this subsection. Following the effective date of this Article, brewers may obtain beer wholesaler licenses to distribute beer, also known as brewery-owned branches, to up to two (2) territories within the state. Any brewery-owned branch in operation on the date of adoption of this Article may not expand its distribution territory that was in effect on the date of adoption of this Article. If a brewer maintained one or more licenses to distribute low-point beer in the state prior to the effective date of this Article, then up to two (2) of the brewer's low-point beer distribution licenses shall automatically convert to beer distribution licenses upon the effective date of this Article. All low-point distribution licenses shall cease to exist following this conversion date,

b. [*see note below regarding effective date] from the date of adoption of this Article by the voters until the effective date of this Article, brewers may continue to obtain and operate up to two (2) low-point beer brewery-owned branches pursuant to the existing low-point beer laws pertaining to the distribution of low-point beer by brewery-owned branches,

c. only after the effective date of this Article, the Legislature may duly enact legislation to require, by statute, the divestiture of all brewery-branches. If the Legislature requires brewers to divest, it must require full divestiture of every brewery-owned branch in the state, and it shall allow brewers at least (1) year but no more than three (3) years to complete said divestiture. Except as provided in this subsection, and except for a small brewer as defined by law, no other member of one tier may own an interest in a business licensed in a different tier;

2. A manufacturer, except a brewer, shall not be permitted to sell alcoholic beverages in this state unless such sales occur through an Oklahoma wholesaler. A manufacturer, except a brewer, or subsidiary of any manufacturer, who markets his or her product solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, winemaker or importer of alcoholic beverages, bottled or made in a foreign country, either within or without this state, may sell such brands or kinds of alcoholic beverages to any licensed wholesaler who desires to purchase the same. Provided, if a manufacturer, except a brewer, elects to sell its products to multiple wholesalers, such sales shall be made on the same price basis and without discrimination to each wholesaler; . . .

[2] Young v. Station 27, Inc., 2017 OK 68, Â¶18, 404 P.3d 829; St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 918, ("Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts."), quoting Williams v. Bailey, 1954 OK 19, 268 P.2d 868, 871; Pfister v. Johnson, 1935 OK 824, 173 Okla. 541, 49 P.2d 174, 176-177, 102 A.L.R. 31 (Court's construction which results in consistency in statutory language must be adopted.).

[3] In re Initiative Petition No. 2 of Cushing v. Harlow, et al., 1932 OK 124, Â¶19, 10 P.2d 271.

[4] Young v. Station 27, Inc., 2017 OK 68, Â¶18, 404 P.3d 829; St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, 782 P.2d 915, 918, ("Whenever an act of the legislature can be so construed and applied as to avoid conflict with the constitution, and give it the force of law, such construction will be adopted by the courts."), quoting Williams v. Bailey, 1954 OK 19, 268 P.2d 868, 871; Pfister v. Johnson, 1935 OK 824, 173 Okla. 541, 49 P.2d 174, 176-177, 102 A.L.R. 31 (court's construction which results in consistency in statutory language must be adopted).

[5] In re Initiative Petition No. 2 of Cushing v. Harlow, et al., 1932 OK 124, Â¶19, 10 P.2d 271.

[6] In re Initiative Petition No. 2 of Cushing v. Harlow, et al., 1932 OK 124, Â¶19, 10 P.2d 271. When economic legislation is involved, the judiciary extends great deference to the legislature. See, e.g., Gladstone v. Bartlesville Ind. School Dist. No. 30, 2003 OK 30, Â¶12, fn. 30, 66 P.3d 442 and Ross v. Peters, 1993 OK 8, Â¶19, 846 P.2d 1107 where in we explained that to equal protection challenges of economic legislation, the judiciary extends great deference to the legislature's judgment as part of an aspect of legislative function and the democratic process.

[7] Enrolled Senate Joint Resolution 68, Enacted by the 2nd Regular Session of the 55th Legislature of the State of Oklahoma Numbered by the Secretary of State, State Question Number 792, Legislative Referendum Number 370. Now, art. 28A Â§2 provides:

Â§ 2. Enactment of laws by Legislature - Direct shipment of alcoholic beverages - Direct sales of wine.

A. The Legislature shall enact laws providing for the strict regulation, control, licensing and taxation of the manufacture, sale, distribution, possession, transportation and consumption of alcoholic beverages, consistent with the provisions of this Article. Provided:

1. a. there shall be prohibited any common ownership between the manufacturing, wholesaling and retailing tiers, unless otherwise permitted by this subsection. Following the effective date of this Article, brewers may obtain beer wholesaler licenses to distribute beer, also known as brewery-owned branches, to up to two (2) territories within the state. Any brewery-owned branch in operation on the date of adoption of this Article may not expand its distribution territory that was in effect on the date of adoption of this Article. If a brewer maintained one or more licenses to distribute low-point beer in the state prior to the effective date of this Article, then up to two (2) of the brewer's low-point beer distribution licenses shall automatically convert to beer distribution licenses upon the effective date of this Article. All low-point distribution licenses shall cease to exist following this conversion date,

b. [*see note below regarding effective date] from the date of adoption of this Article by the voters until the effective date of this Article, brewers may continue to obtain and operate up to two (2) low-point beer brewery-owned branches pursuant to the existing low-point beer laws pertaining to the distribution of low-point beer by brewery-owned branches,

c. only after the effective date of this Article, the Legislature may duly enact legislation to require, by statute, the divestiture of all brewery-branches. If the Legislature requires brewers to divest, it must require full divestiture of every brewery-owned branch in the state, and it shall allow brewers at least (1) year but no more than three (3) years to complete said divestiture. Except as provided in this subsection, and except for a small brewer as defined by law, no other member of one tier may own an interest in a business licensed in a different tier;

2. A manufacturer, except a brewer, shall not be permitted to sell alcoholic beverages in this state unless such sales occur through an Oklahoma wholesaler. A manufacturer, except a brewer, or subsidiary of any manufacturer, who markets his or her product solely through a subsidiary or subsidiaries, a distiller, rectifier, bottler, winemaker or importer of alcoholic beverages, bottled or made in a foreign country, either within or without this state, may sell such brands or kinds of alcoholic beverages to any licensed wholesaler who desires to purchase the same. Provided, if a manufacturer, except a brewer, elects to sell its products to multiple wholesalers, such sales shall be made on the same price basis and without discrimination to each wholesaler; . . .

C. All laws passed by the Legislature under the authority of the Article shall be consistent with the provisions of this section. If any provision of this Article applicable to winemakers is ruled to be unconstitutional by a court of competent jurisdiction, then no winemaker shall be permitted to directly sell its wine to restaurants or other retail stores and outlets that may be from time to time authorized by the state to sell wine for off-premise consumption or to consumers in this state.

The Okla. Const. art. 28A Â§3 provides:

Â§ 3. Legislature to prescribe licenses - On-premise and off-premise consumption.

A. The Legislature shall, by law, prescribe a set of licenses for the sale of alcoholic beverages to consumers for off-premise consumption, which shall include but not be limited to:

1. A Retail Spirits License, which shall be required in order to sell the following:

a. spirits in their original sealed package, and/or

b. refrigerated and non-refrigerated wine and beer in their original sealed package.

A holder of a Retail Spirits License shall be permitted to sell at retail any item that may be purchased at a grocery store or convenience store, as defined by law, so long as the sale of items other than alcoholic beverages do not comprise more than twenty percent (20%) of the holder's monthly sales;. . .

C. The Legislature shall, by law, prescribe a set of licenses for the sale of alcoholic beverages to consumers for on-premise consumption, which may include the sale of spirits, wine and/or beer, provided that such sales of alcoholic beverages by the individual drink have been authorized by the voters in the specific county where the alcoholic beverages are sold, either prior to or after the enactment of this Article.

The Okla. Const. art. 28A Â§6 provides:

The Legislature shall, by law, designate the specific days, hours and holidays on which alcoholic beverages may be sold or served to consumers for off-premise and/or on-premise consumption.

[8] The Okla. Const. art 28A, Â§2, see note 7, supra.

[9] The Secretary of State received the Final Ballot Title for State Question No. 792 on July 7, 2018.

[10] The Ballot Title provides:

This measure repeals Article 28 of the Oklahoma Constitution and restructures the laws

governing alcoholic beverages through a new Article 28A and other laws the Legislature will

create if the measure passes.

The new Article 28A provides that with exceptions, a person or company can have an ownership

interest in only one area of the alcoholic beverage business-manufacturing, wholesaling, or

retailing. Some restrictions apply to the sales of manufacturers, brewers, winemakers, and

wholesalers. Subject to limitations, the Legislature may authorize direct shipments to consumers

of wine.

Retail locations like grocery stores may sell wine and beer. Liquor stores may sell products other

than alcoholic beverages in limited amounts.

The Legislature must create licenses for retail locations, liquor stores, and places serving

alcoholic beverages and may create other licenses. Certain licensees must meet residency

requirements. Felons cannot be licensees.

The Legislature must designate days and hours when alcoholic beverages may be sold and may

impose taxes on sales. Municipalities may levy an occupation tax. If authorized, a state lodge

may sell individual alcoholic beverages for on-premises consumption but no other state

involvement in the alcoholic beverage business is allowed.

With one exception, the measure will take effect October 1,2018.

SHALL THE MEASURE BE APPROVED?

FOR THE MEASURE _ YES

AGAINST THE MEASURE _ NO

A "YES" vote is a vote in favor of this measure. A "NO" vote is a vote against this measure.

[11] The ballot title must reflect the character and purpose of the measure and not be deceptive or misleading. In re Initiative Petition No. 409 v. Retail Liquor Assoc. of Oklahoma, 2016 OK 51, Â¶3, 376 P.3d 250; OCPA Impact, Inc. v. Sheehan, 2016 OK 84, Â¶9, 377 P.3d 138. The ballot must be written so that voters are afforded an opportunity to fairly express their will and it must apprise voters with substantial accuracy what they are asked to approve. OCPA Impact, Inc. v. Sheehan, supra.

[12] Enrolled Senate Joint Resolution 68, Enacted by the 2nd Regular Session of the 55th Legislature of the State of Oklahoma Numbered by the Secretary of State, State Question Number 792, Legislative Referendum Number 370 provides:

A Joint Resolution directing the Secretary of State to refer to the people for their approval or

rejection a proposed amendment to add a new Article XXVIIIA to the Oklahoma Constitution, and to repeal

Sections 1, 1.A, 2, 3, 4, 5, 6, 7, 8, 9 and 10 of Article XXVIII of the Oklahoma Constitution, which

relate to alcoholic beverages; providing that all beverages containing alcohol be subject to Article

and applicable laws; requiring Legislature to enact laws regulating alcoholic beverages subject to

certain provisions; prohibiting certain common ownership; providing exceptions; providing for

automatic conversion and cessation of certain licenses; allowing continuation of certain operations

for certain time period; authorizing enactment of certain legislation; specifying conditions of certain

divesture; stating restrictions applicable to manufacturers, brewers, wholesalers and winemakers;

requiring certain sales to be made on same price basis and without discrimination; prohibiting direct

shipments of alcoholic beverages except under certain circumstances; prohibiting certain sales if

provisions ruled unconstitutional; providing for certain licenses and setting forth restrictions

thereon; defining term; prohibiting licensure of certain persons; providing exceptions; allowing

license holders to enter into certain agreements; providing exceptions; specifying unlawful acts;

requiring Legislature to designate days and hours of sales; providing for taxation of alcoholic beverage

sales; prohibiting state or political subdivisions from engaging in alcoholic beverage business;

providing exceptions; authorizing certain cities and towns to levy occupation tax; providing effective

dates; providing ballot title; and directing filing.

[13] The gist provides:

SQ 792 would amend the Oklahoma constitution to allow grocery and convenience stores to sell wine and high-point beer. Currently these stores are prohibited from selling beer containing above 3.2 percent alcohol by volume, as well as all wine and all liquor. SQ 792 would also allow Oklahoma liquor stores to sell refrigerated beer and alcohol accessories (i.e., sodas, corkscrews). The measure would allow multiple beer and wine stores to be owned by one corporation (ownership would be limited to two stores per person if spirits are sold). Currently individual liquor store owners are not allowed to have more than one store. If SQ 792 passes, these changes would take effect on October 1, 2018.

[14] In re Initiative Petition No. 409 v. Retail Liquor Assoc. of Oklahoma, see note 11, supra.

[15] The Okla. Const. art. 2 Â§32 provides:

Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed, nor shall the law of primogeniture or entailments ever be in force in this State.

[16] The Okla. Const. art 2 Â§44 provides:

The Legislature shall define what is an unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, and enact laws to punish persons engaged in any unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, or composing any such monopoly, trust, or combination.

[17] The Okla. Const. art 5 Â§51 provides:

The Legislature shall pass no law granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State.

[18] The Okla. Const. art 9 Â§45 provides:

Until otherwise provided by law, no person, firm, association, or corporation engaged in the production, manufacture, distribution, or sale of any commodity of general use, shall, for the purpose of creating a monopoly or destroying competition in trade, discriminate between different persons, associations, or corporations, or different sections, communities or cities of the State, by selling such commodity at a lower rate in one section, community, or city than in another, after making due allowance for the difference, if any, in the grade, quantity, or quality, and in the actual cost of transportation from the point of production or manufacture.

[19] The Ballot Title, note 10, supra.

[20] For instance, in the lead up to SQ 792's implementation, a wholesaler was unable to secure any exclusive distribution agreement with a top brand manufacturer because of the manufacturers pre-existing relationships with the two entities who controlled the market. Record on Accelerated Appeal (ROAA), Vol. I, Tab 4, at 4, Â¶9, Ex. 22 Hendershot (Boardwalk) Affidavit Â¶5.

[21] ROAA), Vol. I, Tab 4, at 4, Â¶9, Hendershot (Boardwalk) Affidavit Â¶5, Willima Icke Affidavit, Â¶Â¶4-6, Chris Cathey Affidavit, Â¶3.

[22] ROAA), Vol. I, Tab 4, at 5, Â¶10, Ex. 21, Glen Brokenbush, SB 608 Aims to Restore Competition, The Lawton Constitution (April 21, 2019. Ex. 17, Carmen Forman, Fierecely debated liquor bill heads to governor's desk, The Oklahoman (May 7, 2019); Ex. 6, Tres Savage, Liquor Bicker: Senate send SB 608 to Gov. Kevin Stitt, Nondoc (May 6, 2019).

[23] ROAA), Vol. I, Tab 4, at 54, Â¶10, Ex. 27 Holt Affidavit Â¶Â¶6-9; Jason Sheffield Affidavit Â¶Â¶3-10.

[24] Title 37A O.S. Supp. 2018 Â§1-103 provides in pertinent part:

9. 'Brand' means any word, name, group of letters, symbol or combination thereof, that is adopted and used by a licensed manufacturer to identify a specific bear, wine or spirit, and to distinguish that product from another beer, wine or spirit.

10. 'Brand extension' means:

a. after October 1, 018, any brand of bear or cider introduced by a manufacturer in this state which either:

(1) incorporates all or a substantial part of the unique features of a preexisting brand of the same licensed manufacturer, or

(2) relied to a significant extent on the goodwill associated with the preexisting brand, or

b. any brand of beer that a manufacturer, the majority of whose total volume of all brands of beer distributed in this state by such manufacturer on January 1, 2016, was distributed as low-point beer, desires to sell, introduce, begins selling or theretofore has sold and desires to continue selling a strong beer in this state which either:

(1) incorporates or incorporated all or a substantial part of the unique features of a preexisting low- point beer brand of the same licensed manufacturer, or

(2) relies or relied to a significant extent on the goodwill associated with a preexisting low-point beer brand;

[25] The Okla. Const. art. 5, Â§45 provides:

The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this Constitution.

See, Shaw v. Grumbine, 1929 OK 116, Â¶0, 278 P. 311. See also, In re Initiative Petition No. 281, State Question No. 441, v. Rogers, 1967 OK 230, Â¶49, 434 P.2d 941.

[26] See, State v. Oklahoma Corporation Commission, 1998 OK 118, Â¶14, 971 P.2d 868; See also, Graham v. D&K Oilfield Services, Inc., 2017 OK 72, 404 P.3d 863; In re Askins Properties, L.L.C., 2007 OK 25, 161 P.3d 303; Fair Sch. Finance Coun. of Okla. v. State, 1987 OK 114, 746 P.2d 1135.

[27] The Ballot Title, see note 10, supra.

BARNES, S.J., with whom Goodman, S.J., joins, dissenting:

Â¶1 I respectfully dissent. Oklahoma jurisprudence directs that we construe the Oklahoma Constitution as a consistent whole and attempt to harmonize Article 28A, Â§ 2(A)(2) with the robust anti-monopoly provisions of the Oklahoma Constitution combined with the "broad inherent power" of the Oklahoma Legislature to regulate and supervise all phases of the alcoholic beverages industry, Okla. Alcoholic Beverage Control Bd. v. Seely, 1980 OK 189, Â¶ 6, 621 P.2d 534, a power that "is far broader than the power to regulate or restrict ordinary businesses," State ex rel. Hart v. Parham, 1966 OK 9, Â¶ 11, 412 P.2d 142, and which is reflected in Article 28A, Â§ 2(A) itself.[1]

Â¶2 It is "our obligation as a court . . . to give vitality to all provisions in the Constitution," Okla. Auto. Dealers Ass'n v. State ex rel. Okla. Tax Comm'n, 2017 OK 64, Â¶ 25, 401 P.3d 1152 (footnote omitted) (emphasis in original), and to "measure legislation not merely against a single constitutional provision. . . . [T]he constitution must be construed as a consistent whole, in harmony with common sense and reason, with all pertinent portions of the constitution being construed together." St. Paul Fire & Marine Ins. Co. v. Getty Oil Co., 1989 OK 139, Â¶ 12, 782 P.2d 915 (citations omitted). As with a Legislative act, which is "to be construed in such manner as to reconcile the different provisions, render them consistent and harmonious, and give intelligent effect to each," South Tulsa Citizens Coalition, L.L.C. v. Arkansas River Bridge Auth., 2008 OK 4, Â¶ 15, 176 P.3d 1217 (footnote omitted), the Oklahoma Constitution must similarly be viewed as a single instrument and construed in a manner that renders all pertinent provisions harmonious and operative:

It is a universally recognized rule of construction that, in ascertaining both the intent and general purpose, as well as the meaning, of a constitution or a part thereof, it should be construed as a whole. As far as possible, each provision should be construed so as to harmonize with all the others, yet with a view to giving effect to each and every provision in so far as it shall be consistent with a construction of the instrument as a whole.

Jones v. Winters, 1961 OK 224, Â¶ 42, 365 P.2d 357 (citations omitted). See also Cowart v. Piper Aircraft Corp., 1983 OK 66, Â¶Â¶ 4 & 5, 665 P.2d 315 ("It is not to be supposed that a Constitution contains excess verbiage without force and effect"; "[e]very provision of the Constitution and statutes of Oklahoma is presumed to have been intended for some useful purpose and . . . every provision should be given effect"; and "[i]t is presumed that each portion of the Constitution was intended to be operative and not surplus language.").[2] Thus, the "rule [is] that constitutional provisions are construed to harmonize with each other with a view to giving effect to each and every provision," Okla. City Urban Renewal Auth. v. Med. Tech. & Research Auth. of Okla., 2000 OK 23, Â¶ 17, 4 P.3d 677 (footnote omitted), and, "[i]ndeed, . . . where one constitutional provision[] butts up against another, we must harmonize the two rather than allow one to run roughshod over the other," Okla. Auto. Dealers Ass'n, 2017 OK 64, Â¶ 25 (footnote omitted).[3]

Â¶3 This method of constitutional interpretation, in which we examine all pertinent provisions of the Oklahoma Constitution and attempt to harmonize them before determining whether legislation is inconsistent with the Constitution, is especially applicable to the present case involving a referendum. The Oklahoma Constitution states: "The reservation of the powers of the initiative and referendum in this article shall not deprive the Legislature of the right to repeal any law, propose or pass any measure, which may be consistent with the Constitution of the State and the Constitution of the United States." Okla. Const. art. 5, Â§ 7.[4]

Â¶4 In addition, "[t]his Court does not examine the Constitution to decide whether the Legislature is permitted to act, only whether it is prohibited from acting. If there is any doubt, it should be resolved in favor of the validity of the Legislature's action; restrictions thereon should be strictly construed." In re Detachment of Mun. Territory from City of Ada, Okla., 2015 OK 18, Â¶ 7, 352 P.3d 1196 (citations omitted). "There is a strong presumption which favors legislative enactments. The presumed constitutionality of a legislative enactment is rebutted only when the enactment is prohibited by either the Oklahoma Constitution or federal law." Graham v. D & K Oilfield Servs., Inc., 2017 OK 72, Â¶ 11, 404 P.3d 863 (citations omitted). As stated in Oklahoma Alcoholic Beverage Control Board v. Parkhill Restaurants, Inc., 1983 OK 77, 669 P.2d 265, "The Oklahoma Constitution vests in the Legislature the supreme power to enact laws to meet the needs of the State, and its acts should be upheld unless plainly and clearly within the express prohibitions and limitations fixed by the Constitution." Id. Â¶ 27 (citation omitted). The Parkhill Court further stated that "a presumption in favor of validity is afforded to state laws regulating intoxicating liquors." Id. Â¶ 11 (footnote omitted).

Â¶5 As reflected in Article 28A, Â§ 2(A), which states that "[t]he Legislature shall enact laws providing for the strict regulation, control, licensing and taxation of the manufacture, sale, distribution, possession, transportation and consumption of alcoholic beverages," this Court has explained that the Legislature has "near absolute power to regulate the liquor industry":

The broad sweep of the twenty-first amendment to the Constitution of the United States[5] gives the states near absolute power to regulate the liquor industry as long as they do not act in a discriminatory manner. Wide latitude as to choice of the means to accomplish regulation is accorded . . . .

Okla. Alcoholic Beverage Control Bd. v. Burris, 1980 OK 58, Â¶ 6, 626 P.2d 1316.

Indeed, the Oklahoma Alcoholic Beverage Control Act states:

The Oklahoma Alcoholic Beverage Control Act shall be deemed an exercise of the police power of the State of Oklahoma for the protection of the welfare, health, peace, temperance and safety of the people of this state, and all provisions hereof shall be construed for the accomplishment of that purpose.

37A O.S. Supp. 2018 Â§ 1-106. See also Okla. Alcoholic Beverage Control Bd. v. Seely, 1980 OK 189, Â¶ 6, 621 P.2d 534 (The liquor industry "is a business which is subject to a high degree of supervision and regulation in the interest of the public welfare.").[6]

Â¶6 Pertinent to this case, the Legislature's power in this domain to "enact laws providing for the strict regulation [and] control . . . of [inter alia] the manufacture, sale, distribution, possession [and] transportation . . . of alcoholic beverages," Okla. Const. art. 28A, Â§ 2(A), is combined with the Oklahoma Constitution's express prohibition of monopolies: "[M]onopolies are contrary to the genius of a free government, and shall never be allowed[.]" Okla. Const. art. 2, Â§ 32. This Court has explained that "[i]n 1906-07, the framers of our Constitution held a strong conviction against monopolies . . . and favored encouraging just competition, as shown by clauses, paragraphs, and sections of our organic law." City of Okmulgee v. Okmulgee Gas Co., 1929 OK 472, Â¶ 45, 282 P. 640, overruled on other grounds in Pub. Serv. Co. of Okla. v. Caddo Elec. Coop., 1970 OK 219, 479 P.2d 572.[7] See also Okla. Const. art. 5, Â§ 44 (commanding the Legislature to "define what is an unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, and enact laws to punish persons engaged in any unlawful combination, monopoly, trust, act, or agreement, in restraint of trade, or composing any such monopoly, trust, or combination."); Okla. Const. art. 5, Â§ 51 (prohibiting the Legislature from passing any law "granting to any association, corporation, or individual any exclusive rights, privileges, or immunities within this State."). Also relevant is Article 9, Â§ 45, as language from this section of the Oklahoma Constitution -- entitled "Monopoly or destruction of competition - Discrimination prohibited" -- is mirrored in the very language in Article 28A, Â§ 2(A)(2) upon which the Majority bases its conclusion that the Legislature is powerless to enact SB 608.[8]

Â¶7 Article 28A, Â§ 2(A)(2) does not plainly and clearly prohibit or suspend the Legislature's broad anti-monopoly power over the liquor industry in our state; I believe this conclusion is all the more inescapable when Article 28A, Â§ 2(A)(2) is interpreted in the wider context of the instrument of which it is a part. Thus, although I agree the requirement of a "forced sale," as discussed by the Majority, has been removed or deconstitutionalized, I disagree that the Legislature's power to enact laws to undo or prevent monopolies has also been removed or deconstitutionalized in the domain of alcohol sales. I disagree, in other words, that we must go from one extreme to the other, from forced sales to sales completely unlimited by the Legislature's above-described power, and, in my view, the Majority arrives at such an interpretation -- that manufacturers now have an absolute right to sell to a designated wholesaler "free from legislative interference"[9] -- based only on a review of Article 28A, Â§ 2(A)(2) and repealed Article 28.[10]

Â¶8 A contrary interpretation is discernable, one which harmonizes the various provisions and construes them as a consistent whole. Article 28A, Â§ 2(A)(2) sets forth, as part of the three-tier structure, a general or default ability on the part of manufacturers to sell to any -- hence, zero, "multiple" or, impliedly,[11] one -- licensed wholesaler who desires to buy, but it does not plainly and clearly prohibit the Legislature from exercising its broad anti-monopoly powers in this domain. This is precisely how we would construe a legislative act containing such various provisions.[12] We should also interpret the Constitution in this manner, giving effect to these various provisions consistent with a construction of the instrument as a whole. This interpretation also upholds the constitutionality of SB 608:

We presume that every statute is constitutional, and we approach a constitutional attack on a statute with great caution and grave responsibility. Our consideration is guided by the general principles that the Legislature is sovereign and that the legislative power has no limitation except by specific declaration in the state or federal constitutions. Constitutional restriction on the Legislature will be strictly construed, and a statute will be upheld against a constitutional attack unless it is clearly and overtly inconsistent with the constitution.

Glasco v. State ex rel. Okla. Dept. of Corrections, 2008 OK 65, Â¶ 27, 188 P.3d 177 (citations omitted).[13]

Â¶9 Importantly, this interpretation does not render Article 28A, Â§ 2(A)(2) into a nullity, as Appellees argue.[14] Rather, this reading leaves the general ability of wine and spirit manufacturers to sell to one, and only one, wholesaler operative with regard to more than 99% of such manufacturers as SB 608 operates to exclude just a small fraction of one percent of the many thousands[15] of wine and spirit manufacturers from the general ability to sell to one, and only one, wholesaler. It is the contrary reading which, in my view, unnecessarily renders provisions of our fundamental law into nullities. In my view, the Majority's interpretation would leave the Legislature powerless to prevent and address the potential scenario in which there remains only one wholesaler who controls all of the popular brands sold and distributed to retailers in this state; it would even leave the Legislature powerless with regard to the potential scenario in which there is only one remaining wholesaler despite Article 28A clearly contemplating the continuing viability of "multiple wholesalers." See Okla. Const. art. 28A, Â§ 2(A) ("multiple wholesalers"; "each wholesaler"; "[e]very wholesaler").

Â¶10 Thus, in my view, the Majority adopts an overly strict and technical reading of one provision that ultimately threatens the viability of the three-tier structure itself. "The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption." State v. Millar, 1908 OK 124, Â¶ 0, 96 P. 747 (Syllabus by the Court).[16] We must avoid "parsing by lawyers" that moves at cross-purposes with the "practical interpretation" and "manifest purpose" of the Constitution. Fent v. Fallin, 2014 OK 105, Â¶Â¶ 11 & 17, 345 P.3d 1113.

Â¶11 Furthermore, although we are ultimately concerned only with whether the Legislature is clearly prohibited under the Constitution from enacting SB 608 -- and, absent such a clear prohibition, the Legislature's power is not limited to, for example, waiting until after a destruction of competition has occurred -- it should nevertheless be pointed out that competition among wholesalers in Oklahoma in the sale and distribution of the most popular brands of wine and spirits has already been "destroyed." This was the conclusion reached under very similar circumstances in State ex rel. Hart v. Parham, 1966 OK 9, 412 P.2d 142. In Parham, the Court explained that "the wholesalers [had] attempted to restrict competition by the voluntary allocation of the major brands of liquor among themselves" such that, with regard to the top brands, the wholesalers had divided up the market and there was no competition at the wholesaler tier with regard to top brands. Id. Â¶ 27. The Parham Court explained it was "clear that" if this arrangement were permitted, then "the extensive competition heretofore existing between wholesalers selling the same [major or top] brands of liquor would be destroyed." Id. Â¶ 17 (emphasis added).

Â¶12 As the Majority acknowledges, in the current market only two wholesalers control the sale and distribution to retailers of all of the most popular brands, and those two wholesalers do not even compete with one another with regard to those brands. From the perspective of Oklahoma retailers, any one of the 25 most popular brands -- and as many as 90 of the top 100 brands -- is currently legally obtainable[17] from only one wholesaler. As the Majority notes,

On July 15, 2019, the ABLE Commission published the top 25 brands of wine and liquor. Southern Glazer's Wine and Spirits of Oklahoma, LLLP is the exclusive distributor of fourteen of the top 25 brands. Central Liquor Co. L.P., d/b/a RNDC Oklahoma is the exclusive distributor of the other eleven top 25 brands.[18]

Thus, Oklahoma retailers have only one place to go to purchase any one of these particular top brands, a scenario that is destructive of competition among the "multiple wholesalers" contemplated under Article 28A, Â§ 2, an Article containing as its most fundamental objective the continued viability of the three-tier structure, including a privately-owned and competitive second tier of multiple wholesalers.[19] Under the Majority's reading, the Legislature is powerless to address this scenario or prevent even more flagrant potential scenarios at the wholesaler tier.[20]

Â¶13 The Majority concludes that "[o]nly an amendment to the Constitution can change what the people enshrined," but, in my view, this conclusion stems from a departure from the fundamental rules of constitutional interpretation discussed above. It is nevertheless illuminating to question what such an amendment would look like. The Legislature could perhaps attempt a new referendum seeking voter approval of SB 608 (i.e., that portion of SB 608 under consideration) as part of the Oklahoma Constitution. However, the Legislature, which might in the future deem it wise to adjust the number of top brands subject to its requirements in order to address monopolization at the wholesaler tier,[21] or even to abolish SB 608 altogether, would be forced to again seek to change the Constitution in order to do so.[22] The Legislature could instead propose language stating, in effect, that its duty to strictly regulate the alcohol industry includes the power to pass anti-monopoly laws in this domain and the ability of manufacturers to sell to one wholesaler is not absolute. However, in my view, such language would be redundant, as it is already discernable from a review of the entire instrument of the Oklahoma Constitution. See, e.g., Okla. City Urban Renewal Auth. v. Med. Tech. and Research Auth. of Okla., 2000 OK 23, Â¶ 17, 4 P.3d 677 ("[N]othing in the language of art. 10, Â§ 6C indicates that it is intended to affect any other constitutional provision. It contains no language impacting or altering the debt limitations of art. 10, Â§ 26," and "[t]o hold differently would require us to strike debt limitation provisions from the Oklahoma Constitution, and to ignore the rule that constitutional provisions are construed to harmonize with each other with a view to giving effect to each and every provision." (footnote omitted)).

Â¶14 In United States v. Sprague, 282 U.S. 716 (1931), the United States Supreme Court stated:

If the framers of the instrument had any thought that amendments differing in purpose should be ratified in different ways, nothing would have been simpler tha[n] so to phrase article 5 as to exclude implication or speculation. The fact that an instrument drawn with such meticulous care and by men who so well understood [h]ow to make language fit their thought does not contain any such limiting phrase affecting the exercise of discretion by the Congress in choosing one or the other alternative mode of ratification is persuasive evidence that no qualification was intended.

Id. at 732. Similarly, here, Article 28A, Â§ 2, which is more than 1,200 words long and contains various mandatory provisions, contains no explicit statement affecting the anti-monopoly provisions of the Oklahoma Constitution or providing that manufacturers have an absolute right to sell to one, and only one, wholesaler. There is certainly no such language anywhere in the ballot title.[23] Rather, the ability to sell to one wholesaler is a mere implication from the two sentences upon which Appellees base their entire argument.[24]

Â¶15 Finally, Appellees emphasize that Article 28A, Â§ 2(A) states that "[t]he Legislature shall enact laws" strictly regulating the alcoholic beverages industry "consistent with the provisions of this Article." (Emphasis added.) I disagree, however, that this language effectively suspends all other provisions of the Oklahoma Constitution and requires that Article 28A be interpreted in a vacuum. The Legislature must, of course, enact laws consistent with the provisions of Article 28A, but Article 28A itself must be construed as part of the Oklahoma Constitution. See Calvey v. Daxon, 2000 OK 17, Â¶ 14, 997 P.2d 164 ("The Legislature and the voters expect the courts to be familiar with settled rules of constitutional construction and to follow them."). All pertinent provisions of the Oklahoma Constitution must be reconciled and vitalized, not unnecessarily rendered dormant and ineffective.

Â¶16 For all these reasons, I respectfully dissent. In my opinion, we must construe the Oklahoma Constitution as a consistent whole, and resist reading Article 28A, Â§ 2(A)(2) in a vacuum with its predecessor. Such a reading reveals, in my view, that the Legislature's broad anti-monopoly power over the highly-regulated alcoholic beverages industry in our state is not plainly and clearly prohibited or suspended. I would reverse the trial court's order finding SB 608 is unconstitutional.

FOOTNOTES

[1] "The Legislature shall enact laws providing for the strict regulation, control, licensing and taxation of the manufacture, sale, distribution, possession, transportation and consumption of alcoholic beverages[.]" Okla. Const. art. 28A, Â§ 2(A).

[2] The Majority, citing Cowart, states that it is to "construe[] constitutional provisions 'as a consistent whole in harmony with common sense and reason,'" Maj. Op., Â¶ 12; thus, all pertinent provisions must be construed as a consistent whole prior to reaching a determination whether legislation is inconsistent with the Constitution. See also Dobbs v. Bd. of Cnty. Comm'rs of Okla. Cnty., 1953 OK 159, Â¶ 0, 257 P.2d 802 (Syllabus by the Court) ("In passing upon the constitutionality of an act of the Legislature all pertinent sections of the Constitution should be considered together in arriving at a correct interpretation.").

[3] Thus, it is my understanding of the reasoning of these cases that even where a conflict appears to exist between two or more constitutional provisions, unless that conflict is truly irreconcilable, the provisions must be harmonized. In addition to the above-cited cases, see 16 C.J.S. Constitutional Law Â§ 100 ("A court must reconcile provisions that appear to conflict," and "[i]n construing a constitution, distinct provisions are repugnant to each other only when they relate to the same subject, are adopted for the same purpose, and cannot be enforced without substantial conflict. When a court is faced with conflicting policies arising out of multiple constitutional provisions in a specific factual situation, it must strike a balance between the provisions if possible."). See also In re Okla. Capitol Improvement Auth., 2003 OK 59, Â¶ 30, 80 P.3d 109 ("the-purpose-of-borrowing provision must be harmonized with other constitutional provisions"); Matthews v. Funck, 2007 OK CIV APP 15, Â¶Â¶ 20 & 24, 155 P.3d 852 ("This interpretation of section 8C [of Article 10 of the Oklahoma Constitution] not only harmonizes its provisions with the other sections of Article 10, and particularly section 8B, but also allows for a construction of section 2890.1 [of Title 68 of the Oklahoma Statutes] that is consistent with the Constitution"; "while there is no lack of confusion and contradiction in the constitutional and statutory provisions at issue in this case, we find this interpretation most consistently harmonizes these provisions with reason and common sense." (citation omitted) (footnote omitted)).

[4] The Oklahoma Constitution also provides: "The authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." Okla. Const. art. 5, Â§ 36. Further, sections 36 through 45 of Article 5 are entitled "Powers and Duties" of the Oklahoma Legislature, and Article 5, Â§ 44, entitled "Unlawful restraints of trade," discussed below, is contained within this same portion of the Oklahoma Constitution.

[5] "The transportation or importation into any State . . . for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. Const. amend. XXI, Â§ 2. The United States Supreme Court has explained that "[t]he States enjoy broad power under Â§ 2 of the Twenty-first Amendment to regulate the importation and use of intoxicating liquor within their borders," Capital Cities Cable, Inc. v. Crisp, 467 U.S. 691, 712 (1984), and "the Twenty-first Amendment limits the effect of the dormant Commerce Clause on a State's regulatory power over the delivery or use of intoxicating beverages within its borders," 44 Liquormart, Inc. v. R.I., 517 U.S. 484, 516 (1996). However, just as, in my view, the mere existence of Article 28A does not insulate the alcohol industry in this state from Legislative powers and duties set forth elsewhere in the Oklahoma Constitution, the United States Supreme Court has similarly held that the Twenty-First Amendment "does not license the States to ignore their obligations under other provisions of the [United States] Constitution," such as the Equal Protection Clause and the First Amendment, 44 Liquormart, Inc., 517 U.S. at 516.

[6] Cf. Seal v. Corp. Comm'n, 1986 OK 34, Â¶Â¶ 21 & 45, 725 P.2d 278 ("It is well settled that the State may adopt reasonable regulation in the exercise of its police power to protect the correlative rights of owners through ratable taking," and "[t]he State of Oklahoma . . . has extensively and continuously regulated the natural gas industry"; "the parties could not have reasonably expected that their contractual rights were immune from alteration by subsequent State regulation.").

[7] See also Keith D. Tracy & Ronald L. Walker, Antitrust Law: Indirect Purchaser Standing to Sue in Oklahoma -- Major v. Microsoft Corp., 57 Okla. L. Rev. 727, 727-28 (2004) ("Oklahoma antitrust law originated in the Oklahoma Constitution, which not only prohibits monopolies [as set forth in Okla. Const. art. 2, Â§ 32], but also authorizes the state legislature [as set forth in Okla. Const. art. 5, Â§ 44] to define each 'combination, monopoly, trust, act, or agreement, in restraint of trade' that should be declared unlawful."); Maurice H. Merrill, The Administrative Law of Oklahoma, 4 Okla. L. Rev. 286, 286-87 (1951) ("The convention to frame a constitution for Oklahoma met November 20, 1906," when Theodore Roosevelt was President of the United States and "the dominant political philosophy of the new state [of Oklahoma] envisioned a democratic equality of opportunity protected by governmental process against corporate and monied interests. Naturally, the constitution framed under this philosophy contained provisions designed to facilitate [some amount of] state control over corporate and business activities and to encourage governmental activity as an agency of general welfare." (footnotes omitted)); and Gerard Michael D'Emilio, Comment, Frontier Feudalism: Agrarian Populism Meets Future Interest Arcana in the Land of Manifest Destiny, 70 Okla. L. Rev. 943, 982 n.236 (2018) (The Oklahoma Constitution "struck out against monopolization[.]").

We must take into consideration the times and circumstances under which the state constitution was formed -- the general spirit of the times, and the prevailing sentiments among the people. Every constitution has a history of its own, which is likely to be more or less peculiar; and unless interpreted in the light of this history is liable to be made to express purposes which were never within the minds of the people in agreeing to it. This the court must keep in mind when called upon to interpret it; for their duty is to enforce the law which the people have made, and not some other law which the words of the constitution may possibly be made to express.

Thomas v. Reid, 1930 OK 49, Â¶ 39, 285 P. 92 (citation omitted). See also Wall v. Marouk, 2013 OK 36, Â¶ 4, 302 P.3d 775 ("The Oklahoma Constitution is a unique document. Some of its provisions are unlike those in the constitutions of any other state, and some are more detailed and restrictive than those of other states."). "A Constitution is a Magna Charta of the people's rights, the fundamental law of the land, intended, not for short periods of time, but for all time." City of Okmulgee, 1929 OK 472, Â¶ 17 (citation omitted).

[8] Article 9, Â§ 45 states, in part, that no association or corporation

engaged in the production, manufacture, distribution, or sale of any commodity of general use, shall, for the purpose of creating a monopoly or destroying competition in trade, discriminate . . . by selling such commodity at a lower rate in one section, community, or city than in another, after making due allowance for the difference, if any, in the grade, quantity, or quality, and in the actual cost of transportation from the point of production or manufacture.

Cf. Okla. Const. art. 28A, Â§ 2(A)(2) ("such sales shall be made on the same price basis and without discrimination to each wholesaler"). Importantly, Article 28A, Â§ 2(A)(5) similarly states that, as to wholesalers, "[e]very wholesaler, except a beer wholesaler, must sell its products on the same price basis and without discrimination to all on-premise and off-premise licensees, unless otherwise provided by law." Thus, whether or not SB 608 remains in effect, wine and spirit manufacturers already have no control regarding the sale and distribution of their products to the retail tier in Oklahoma as every wholesaler "must sell its products on the same price basis and without discrimination" to retailers. It is essential to keep this in mind to the extent it is relevant to contemplate whether SB 608 deprives manufacturers (i.e., that small fraction of one percent of manufacturers subject to SB 608, see n.15, infra) of anything of value in the distortions of the highly-regulated three-tier market, and when attempting to analogize SB 608 to industries that do not have this unique structure.

[9] Maj. Op., Â¶ 13.

[10] The Majority states it is not "constru[ing] Article 28A in a vacuum" because it construes Article 28A with "reference to the repealed Article 28[.]" Maj. Op., Â¶ 16. Indeed, the Majority reaches its conclusion that SB 608 infringes Article 28A, Â§ 2(A)(2) and is unconstitutional based solely on a review of Article 28A and Article 28; only then does it turn to other constitutional provisions. That is, only after "hold[ing] SB 608's infringement of Article 28A, Â§ 2(A)(2) is unconstitutional," Maj. Op., Â¶ 17, does the Majority turn to a review of the anti-monopoly provisions of the Oklahoma Constitution. I respectfully disagree with the premise of the Majority's analysis here; in my view, the meaning of Article 28A, Â§ 2(A)(2) must be discerned from a reading of the entire instrument of which it is a part, and only then can any conclusion be reached as to whether SB 608 is inconsistent with the Constitution.

[11] The Majority states that "Article 28A, Â§ 2(A)(2) implies that a manufacturer can also select only one wholesaler." Maj. Op., Â¶ 14 (emphasis added).

[12] For example, "Where the legislative intent is plainly discernible from the provisions of statute when considered as a whole, the real purpose and intent of the legislative body will prevail over the literal import of the words employed." Keck v. Okla. Tax Comm'n, 1940 OK 352, Â¶ 0, 108 P.2d 162 (Syllabus by the Court). The primacy of the purpose and intent is even more pronounced in constitutional analysis, where we look for "the overriding purposes" or "primary purposes." Fent v. Fallin, 2014 OK 105, Â¶Â¶ 14 & 15, 345 P.3d 1113. The Fent Court explained that "[a] constitutional provision must be construed considering its purpose and given a practical interpretation so that the manifest purpose of the framers and the people who adopted it may be carried out." Id. Â¶ 17 (footnote omitted).

[13] This legal standard is, of course, not relaxed at the summary judgment stage. In Lafalier v. Lead-Impacted Communities Relocation Assistance Trust, 2010 OK 48, 237 P.3d 181, the Court explained that even at the summary judgment stage, "there is a presumption that every statute is constitutional. The party seeking a statute's invalidation as unconstitutional has the burden to show the statute is clearly, palpably, and plainly inconsistent with the Constitution. We scrutinize a constitutional attack on a statute with great caution and grave responsibility." Id. Â¶ 15 (footnotes omitted).

[14] As the Majority states, "Distributors claim[] that SB 608 directly conflicts with Article 28A, Â§ 2(A)(2), as SB 608 makes Article 28A, Â§ 2(A)(2)'s discretion to select a single wholesaler a nullity." Maj. Op., Â¶ 8.

[15] As the Majority notes, there are "thousands of other brands of liquor and wine." Maj. Op., Â¶ 20 n.10. Indeed, the number of wine and spirits manufacturers worldwide would appear to be at least in the tens of thousands. For example, according to the National Association of American Wineries, in January 2019 there were over 10,000 wineries in the United States alone. See the National Association of American Wineries, United States Wine and Grape Industry FAQS, https://wineamerica.org/policy/by-the-numbers (last updated 2019).

[16] Accord City of Guymon v. Butler, 2004 OK 37, Â¶ 11, 92 P.3d 80 ("The construction of a constitutional provision must not be so strict as to defeat the purpose of its adoption." (citation omitted)); City of Shawnee v. Williamson, 1959 OK 64, Â¶ 9, 338 P.2d 355 ("The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption."); Lone Star Gas Co. v. Bryan Cnty. Excise Bd., 1943 OK 228, Â¶ 2, 141 P.2d 83 ("the general principle of law that construction of a constitutional provision must not be so strict or technical as to defeat the object and purpose of its adoption" (citations omitted)); and Williams v. City of Norman, 1921 OK 337, Â¶ 0, 205 P. 144 (Syllabus by the Court) ("The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption.").

[17] For example, as to wine and spirits, 37A O.S. Supp. 2019 Â§ 3-101(A) allows "the possession and transportation of alcoholic beverages for the personal use of the possessor and his or her family and guests, so long as the Oklahoma excise tax has been paid thereon," but otherwise states that "[n]o person shall manufacture, rectify, sell, possess, store, import into or export from this state, transport or deliver any alcoholic beverage except as specifically provided in the Oklahoma Alcoholic Beverage Control Act." (Emphasis added.) This is yet one more restriction which well distinguishes the alcohol industry from other industries. While markets in surrounding areas and states can be examined by individuals and businesses shopping, for example, for an automobile, it would be illegal for Oklahoma retailers to shop for wine or spirits outside Oklahoma's borders, and it would be impracticable for most Oklahoma consumers to travel a great distance to shop for a bottle of wine for personal use.

[18] Maj. Op., Â¶ 5 n.4.

[19] Although not essential to my reasoning, it is useful to note that, generally, "[i]t is the existence of monopoly power coupled with the intent to use it for anticompetitive purposes or with inevitable anticompetitive effects that establishes the offense of monopolization." Bd. of Regents of Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n, 1977 OK 17, Â¶ 17 n.26, 561 P.2d 499 (emphasis added). See also Beville v. Curry, 2001 OK 1, Â¶ 1 n.1, 39 P.3d 754 ("Monopoly power is defined [in the Oklahoma Antitrust Reform Act] as the power to control market prices or exclude competition."). When obscure and less popular brands are sold by only one wholesaler, there are no inevitable anticompetitive effects as the thousands of less popular brands do not have the same power to control market prices and exclude competition as do the most popular brands, and a retailer can, for example, simply opt not to purchase a less popular brand and replace it with another lesser-known brand sold by another wholesaler. However, the business of many retailers is likely dependent on having some, if not all, of the most popular brands in stock, brands that can currently be obtained from only one wholesaler.

[20] Regarding the importance of examining, in uncertain cases, "the effects and consequences" and "the right being vindicated in the end," the Court in State v. State Board of Equalization, 1924 OK 682, 230 P. 743, stated that "[i]t has been well said" that

[n]o feature of the judicial function is of equal dignity with that which requires dealing with what is and what is not really a part of the Constitution, or those things which may have been engrafted upon the original instrument. None requires an equal degree of care to reach a right conclusion, and courage to pronounce it. The court may, and should, and must, on such great occasions, look to the effects and consequences. Not to do so with the thought of hesitation, much less omission to do what duty to the public requires; but as an inspiration to reach the highest attainable degree of certainty of the right being vindicated in the end.

Id. Â¶ 9 (citation omitted).

[21] The Majority questions whether SB 608 could even be viewed as an attempt by the Legislature "to combat anticompetitive markets pursuant to Okla. Const. art. V, Â§ 44" because SB 608 does not "set forth any punishment for those entities engaging in unlawful restraint of trade," "does not define an unlawful restraint," and "only deals with the top 25 brands of liquor and wine[.]" Maj. Op., Â¶ 20 n.10 (emphasis in original). However, the Oklahoma Alcoholic Beverage Control Act, at the very least, does provide a punishment for "[a]ny person who shall violate any provision of the Oklahoma Alcoholic Beverage Control Act for which no specific penalty is prescribed[.]" 37A O.S. Supp. 2018 Â§ 6-125(A). Further, SB 608 does, in my view, define an unlawful restraint -- i.e., in the Legislature's wisdom, the definition comprises manufacturers of top brands that sell their wares to one, and only one, wholesaler while refusing to sell to any other wholesaler who desires to buy those top brands. Further, it appears the Majority is asserting that a true anti-monopoly regulation would apply to all manufacturers, even manufacturers of the most obscure, boutique, or small-batch varieties of wines and spirits; however, in my view, not only, as a practical matter, would manufacturers of far less popular brands potentially not have sufficient product to sell to multiple wholesalers, but, more to the point, such a regulation would be targeting brands that have no potential anticompetitive effects. See n.19, supra. Finally, the Legislature's power is, in my view, not limited to an isolated reading of Article 5, Â§ 44; instead, it fundamentally arises from its broad regulatory powers in the area of alcohol sales, a power which, moreover, is coupled with the anti-monopoly provisions, including the prohibition of monopolies set forth in Article 2, Â§ 32, as well as the command and legislative duty set forth in Article 5, Â§ 44.

[22] Cf. Oklahoma's Children, Our Future, Inc. v. Coburn, 2018 OK 55, Â¶ 17 n.33, 421 P.3d 867 (Wyrick, J., and Winchester, J., dissenting) ("[U]nlike constitutional interpretation, if a court erroneously interprets a statute, the Legislature is free to correct the error by amending the statute.").

[23] In Fent v. Fallin, 2014 OK 105, 345 P.3d 1113, the Court stated:

Constitutional provisions are not made for parsing by lawyers, but for the instruction of the people and the representatives of government, so that they may read and understand their rights and duties. Words used in a constitutional provision and an accompanying ballot title are to be construed in a way most familiar to ordinary people who voted on the measure.

Id. Â¶ 12 (footnotes omitted). "The ballot title is a contemporaneous construction of the constitutional amendment and weighs heavily in determining its meaning." Id. (emphasis added) (footnote omitted). Thus, the Fent Court stated: "With this guidance in mind, the issue becomes what would the ordinary person who voted on [the state question at issue], as explained by its ballot title, understand they were approving[.]" Id. Â¶ 13. See also McDonald v. City of Chicago, Ill., 561 U.S. 742, 828-29 (2010) ("When interpreting constitutional text, the goal is to discern the most likely public understanding of a particular provision at the time it was adopted," and the focus is on "what the public understood the words chosen by the draftsmen to mean.").

[24] In my view, even an isolated reading of these sentences is less than persuasive regarding a right on the part of manufactures to sell to a designated wholesaler that is completely "free from legislative interference." As I read it, the purpose of the second sentence, for example, is to prevent certain monopolistic tendencies. The only explicitly mandatory language in the two sentences -- certainly the only use of the word "shall" -- is the prohibition of discriminatory pricing contained in the second sentence: "[I]f a manufacturer . . . elects to sell its products to multiple wholesalers, such sales shall be made on the same price basis and without discrimination to each wholesaler[.]" Okla. Const. art. 28A, Â§ 2(A)(2) (emphasis added). This language, as indicated above, directly alludes to and mirrors Article 9, Â§ 45 of the Oklahoma Constitution, which is entitled "Monopoly or destruction of competition -- Discrimination prohibited." Indeed, other courts have explained that the three-tier system itself is structured so as to "prevent[] . . . monopolistic tendencies . . . ." S.A. Discount Liquor, Inc. v. Texas Alcoholic Beverage Comm'n, 709 F.2d 291, 293 (5th Cir. 1983). In an Oklahoma case confronting language no longer in effect but very similar to that found in Article 28A, including a "require[ment] [that] a manufacturer . . . sell to every licensed wholesaler on the same price basis and without discrimination," "prohibitions against financial assistance from any manufacturer or wholesaler to any retailer," "prohibitions against price discrimination against wholesalers or retailers," and a "constitutional amendment . . . require[ing] each manufacturer to sell to every licensed wholesaler on the same price basis and without discrimination," the Court stated that "[i]t is apparent on the face of all these sections that their general purpose is the prevention of any tendency toward monopoly, or the control of the industry by any segment or special interest group, with the resulting destruction of competition." Parham, 1966 OK 9, Â¶ 16. Therefore, in my view, the reason for the existence of the above-quoted sentence from Article 28A, Â§ 2(A)(2) is the prevention of monopolistic tendencies, not the enshrinement of monopoly power. This language, in my view, is aimed at only those scenarios involving sales "to multiple wholesalers" simply because it would be illogical if its requirement (i.e., that such sales shall be made on the same price basis and without discrimination to each wholesaler) sought to embrace other scenarios. Thus, Appellants justifiably assert that the purported right on the part of manufacturers to sell to only one wholesaler completely free from legislative interference would constitute a proverbial "elephant in a mouse hole." See, e.g., Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions -- it does not, one might say, hide elephants in mouseholes. Respondents' textual arguments ultimately founder upon this principle." (citations omitted)); see also Dep't of Commerce v. N.Y., 139 S. Ct. 2551, 2602 (2019) (Alito, J., concurring in part and dissenting in part) ("Reading [the particular statutory provision] to mean what the District Court thought would turn it into the proverbial elephant stuffed into a mouse hole. [The provision], however, is a decidedly mouse-like provision. It was enacted with no fanfare and no real explanation . . . ." (footnote omitted)).