2014 OK 105

Jerry F. FENT, as a resident taxpayer, of the State of Oklahoma, and all other similar persons, Petitioner,

v.

Mary FALLIN, Governor of the State of Oklahoma, Respondent.

No. 112,867.

Supreme Court of Oklahoma.

Dec. 2, 2014.

Jerry R. Fent, Oklahoma City, Oklahoma, Pro Se Petitioner.

Scott Pruitt, Oklahoma Attorney General, Patrick Wyrick, Solicitor General, Oklahoma City, Oklahoma, for the Respondent.

Louis W. Bullock, Patricia W. Bullock, for Amicus Curae, Tulsa, Oklahoma, Steven H. Dow.

KAUGER, J.:

¶ 1 The dispositive issue is the definition of "raising revenue" for purposes of art. 5 § 33 of the Okla. Const.[1] The parties concede that if Senate Bill No. 1246[2] is a revenue bill subject to § 33, it failed to comply with the constitutional requirements for its enactment. We hold that because the ballot title reveals that the measure was aimed at only bills "intended to raise revenue" and "revenue raising bills," the obvious meaning of raising revenue in this context is to increase revenue.

### FACTS

¶ 2 Senate Bill No. 1246 (SB 1246/the bill) is a bill concerning the modification of income tax rates in Oklahoma which do not become effective until fiscal year 2016.[3] Bills for raising revenue are required to originate in the House of Representatives pursuant to art. 5, § 33. This bill originated in the Sen-

1. Art. 5 § 33 of the Okla. Const. provides that:
   Revenue bills—Origination—Amendment—Limitations on passage—Effective date—Submission to voters.
   A. All bills for raising revenue shall originate in the House of Representatives. The Senate may propose amendments to revenue bills.
   B. No revenue bill shall be passed during the five last days of the session.
   C. Any revenue bill originating in the House of Representatives shall not become effective until it has been referred to the people of the state at the next general election held throughout the state and shall become effective and be in force when it has been approved by a majority of the votes cast on the measure at such election and not otherwise, except as otherwise provided in subsection D of this section.
   D. Any revenue bill originating in the House of Representatives may become law without being submitted to a vote of the people of the state if such bill receives the approval of three-fourths (3/4) of the membership of the House of Representatives and three-fourths (3/4) of the membership of the Senate and is submitted to the Governor for appropriate action. Any such revenue bill shall not be subject to the emergency measure provision authorized in Section 58 of this Article and shall not become effective and be in force until ninety days after it has been approved by the Legislature, and acted on by the Governor.

2. Senate Bill No. 1246 is found at Okla. Sess. L.2014, Ch. 195. It modifies income tax rates and requires the Board of Equalization to make certain determinations.

3. Oklahoma Tax Commission. Fiscal Impact Statement and/or Administrative Impact Statement. Second Regular Session, Fifty–Fourth Oklahoma Legislature.

ate and was passed by the Senate during the Second Regular Session of the Fifty–Fourth Legislature on February 27, 2014, with a vote of 32 ayes and 10 nays. It passed the House of Representatives on April 23, 2014, with a vote of 56 ayes and 30 nays. The Governor approved the bill on April 28, 2014, and filed it with the Secretary of State the same day. The effective date of the modification is August 28, 2014.

¶ 3 On May 22, 2014, the petitioner, Jerry R. Fent (petitioner), a State of Oklahoma resident taxpayer, filed this cause to challenge the validity of the Legislature's enactment of SB 1246. On June 20, 2014, another resident and taxpayer, Steven H. Dow, filed an *amicus curiae* brief which we accepted on July 11, 2014. The Court held oral argument on October 14, 2014.

¶ 4 The petitioner brought this original action arguing that SB 1246, a bill which reduces income taxes in some circumstances, was a "raising revenue" bill pursuant to the Okla. Const. art. 5, § 33 and as such, it must comply with the Constitution's prescribed methods for enactment. He insists that whether legislation increases or decreases taxes is irrelevant if the purpose of the legislation is to collect taxes. The respondent contends that any bill that lowers income taxes is not "raising revenue," thus not falling within the confines of the Okla. Const. art. 5, § 33. This argument is premised on the proposition that in 1992, when the voters changed the requirements on how revenue bills must be passed in the Legislature, the voters understood the definition of "raising revenue" to mean increase only.

**SENATE BILL NO. 1246 IS NOT A REVENUE BILL SUBJECT TO THE LIMITATIONS ON PASSAGE AS PRESCRIBED BY ART. 5, § 33 OF THE OKLAHOMA CONSTITUTION.**

■ ¶ 5 The Okla. Const. art. 5, § 33 concerns "revenue" bills. At statehood, it provided only three requirements:

1. All bills for raising revenue shall originate in the House of Representatives.

2. The Senate may propose amendments to revenue bills.

3. No revenue bill shall be passed during the last five days of the session.

The Oklahoma Supreme Court considered this constitutional provision and defined "raising revenue" a year after statehood on December 21, 1908, in *Anderson v. Ritterbusch,* 1908 OK 250, 98 P. 1002, 22 Okla. 761.

¶ 6 *Anderson* did not involve a bill which decreased revenue but it did involve a challenge to a state statute which concerned the collection of taxes. The Court defined the use of the word "revenue" as a law in which taxes are levied for state purposes. However, it excluded from the definition laws which incidentally created revenue, if the primary purpose of the law was not revenue raising. In deciding the case, the Court did not define "revenue" as a decrease in taxes but it discussed the history of the origin of governmental "revenue" raising, describing the word "revenue" as:

1) laws made for the direct and avowed purpose of creating and securing revenue or public funds for the service of the government;

2) bills which impose taxes upon the people, either directly or indirectly, or lay duties, imposts, or excises for the use of the government;

3) confined to bills to levy taxes in the strict sense of the word, and has not been understood to extend to bills for other purposes which may incidentally create revenue.

¶ 7 The Court decided that the precise meaning of the term "raising revenue" as used in the Okla. Const. art. 5, § 33 was to levy a tax to collect revenue; and that if the purpose of the act is to levy or collect taxes for the State, it must comply with the Okla. Const. art. 5, § 33. The *Anderson* Court, quoting a frequently cited Alabama case,[4] said that:

It is clear to our minds that 'increase of revenue' is not implied in the language 'to raise revenue.' The transitive verb 'to raise' in this connection means 'to bring together; to collect; to levy; to get togeth-

---

**4.** *Perry County et al. v. Selma, etc., Railway Company,* 58 Ala. 546 (1877).

er for use or service, as to raise money. * * *" (Webster's Dictionary.) The precise meaning of this clause is to levy a tax as a means of collecting revenue. *See Harper v. Commissioners of Elberton,* 23 Ga. 566 [(1857)]. The act in question in one sense reduced the taxes, for it assumed to relieve certain railroad property from county taxation. But it was nevertheless a bill to raise revenue.

This is the only reference to the suggestion that the definition of "raise" used was meant to include a "decrease" in revenue, nor have we had a case since *Anderson* which directly concerned a revenue bill which "decreased" taxes.

¶ 8 We need not be concerned that the obvious purpose of SB 1246 is to levy income taxes for state purposes. The title of an act is used to determine legislative intent.[5] The entirety of SB 1246 is concerned with the collection of income taxes. There isn't a provision of the bill that concerns another topic. The title of SB 1246 supports a determination that its purpose is to collect or levy taxes.[6]

¶ 9 The voters amended art. 5, § 33 of the Okla. Const. by State Question No. 640, Initiative Petition No. 348, at an election held on March 10, 1992. The 1992 Ballot Title of State Question 640 states:

Shall an amendment to Section 33 of Article V of the Oklahoma Constitution which would require any bill passed by the legislature intended to raise revenue for support of state government be submitted to a vote of the people at the next general election before it can become effective; authorizing enactment of revenue raising bills without a vote of the people if 3/4 of the members of each house approve the bill and it is sent to the Governor for 90 days; and removing the authority of the legislature to prevent a referendum vote through enactment of an emergency clause be adopted?

¶ 10 Although no change was made to the definition of "raising revenue" in 1992, the respondent argues that the voters did not intend § 33 to apply to bills which decrease state revenues, but that it was only meant to apply to increases. We agree. The State included in its brief newspaper articles discussing limiting the Legislature's taxing power, restricting tax hikes to bring accountability to the government. The intent of the framers and electorate in adopting the 1992 amendment must be given effect. Absent an ambiguity, the intent of the framers and electorate is settled by the language of the provision itself and the courts are not at liberty to search for its meaning beyond the provision.

¶ 11 More importantly, the intent of the framers and electorate is also reflected in the ballot title of the proposed amendment. The ballot title and text of the provision are to be read together, even if the text contains no ambiguities or absurdities.[7] The ballot title is a contemporaneous construction of the constitutional amendment and weighs heavily

---

5. *Jones,* supra note 8 at ¶ 15; *Atkinson v. Halliburton Co.,* 1995 OK 104, ¶ 17, 905 P.2d 772.

6. SB 1246, Okla. Sess. L.2014, Ch. 195 states that:
   An Act relating to income tax; amending 68 O.S.2011, Section 2355, as amended by Section 2, Chapter 253, O.S.L.2013 (68 O.S. Supp.2013, Section 2355), which relates to imposition of tax; deleting expiration date of specified tax rate levy; deleting tax rate applicable to certain time periods under specified circumstances; conforming references; amending 68 O.S.2011, Section 2355, as last amended by Section 1 of this act, which relates to imposition of tax; providing expiration date for specified tax rate levy contingent upon specified circumstance; modifying tax rate applicable to certain amounts of taxable income during specified time periods; providing for certain tax levy contingent upon specified determination by State Board of Equalization; conforming language; imposing specified duties on State Board of Equalization related to implementation of certain top marginal income tax rates for specified time periods; prescribing method for specified computations for specified time periods; mandating certain action based on computations; repealing Section 3, Chapter 253, O.S.L.2013 (68 O.S. Supp.2013, Section 2355.1E), which relates to implementation of certain top marginal income tax rate; and providing for codification.

7. *Southwestern Bell Telephone Co. v. Oklahoma State Bd. of Equalization,* 2009 OK 72, ¶ 13, 231 P.3d 638.

in determining its meaning.[8]

¶ 12 Constitutional provisions are not made for parsing by lawyers, but for the instruction of the people and the representatives of government, so that they may read and understand their rights and duties.[9] Words used in a constitutional provision and an accompanying ballot title are to be construed in a way most familiar to ordinary people who voted on the measure.[10] Words which do not of themselves denote that they are used in a technical sense, are to have their obvious meaning.[11]

¶ 13 With this guidance in mind, the issue becomes what would the ordinary person who voted on the 1992 amendment, as explained by its ballot title, understand they were approving regarding the generation of State revenue. The amendment's text and ballot title both indicate that the people are establishing new restrictions on "revenue bills" and the original definition of this term includes bills that both increase and decrease revenue. However, the ballot title reveals that the measure was aimed only at bills "intended to raise revenue" and "revenue raising bills." The plain, popular, obvious and natural meaning of "raise" in this context is "increase." This plain and popular meaning was expressed in the public theme and message of the proponents of this amendment: "No New Taxes Without A Vote Of The People."

¶ 14 Reading the ballot title and text of the provision together reveals the 1992 amendment had two primary purposes. First, the amendment has the effect of limiting the generation of State revenue to existing revenue measures. Second, the amendment requires future bills "intended to raise revenue" to be approved by either a vote of the people or a three-fourths majority in both houses of the Legislature.

¶ 15 Clearly, one of the overriding purposes of the 1992 amendment to art. 5, § 33 was to secure "tax relief." Given this fact, it is extremely doubtful that the people intended the popular vote or super-majority approvals to apply to a Legislative measure providing further relief by a reduction in the income tax rate. Although this Court approved the ballot title for the 1992 amendment in *In Re Initiative Petition No. 348, State Question No. 640,* 1991 OK 110, 820 P.2d 772, we did not specifically address whether the ballot title informed the voters whether the measure was meant to apply to both tax increases and decreases. That issue was simply not before the Court.

¶ 16 We also traced the history of § 33 in *Calvey v. Daxon,* 2000 OK 17, 997 P.2d 164. We explained that the 1992 amendment of art. 5, § 33 changed the method state government may use to raise revenue. It did not change the clearly settled meaning of the terms, "revenue bill" or "bill for raising revenue." However, the issue in *Calvey* concerned the Legislature's act of transferring money from fee-generated funds to a special cash fund. Again, we did not specifically address the 1992 ballot title and whether it revealed that measure was aimed only at bills which voters would understand "raise" to mean "increase" only. Consequently, both *In Re Initiative Petition No. 348, State Question No. 640,* supra, and *Calvey v. Daxon,* supra, are distinguishable on their facts and are not otherwise dispositive of this cause.

¶ 17 A constitutional provision must be construed considering its purpose and given a practical interpretation so that the manifest purpose of the framers and the people who adopted it may be carried out.[12] Nothing in the ballot title or text of the provision reveals any intent to bar or restrict the Legislature from amending the existing revenue measures, so long as such statutory

8. *Austin, Nichols & Co. v. Oklahoma County Bd. of Tax Roll Corrections,* 1978 OK 65, ¶ 18, 578 P.2d 1200.

9. *In re Assessment of Personal Property Taxes Against Missouri Gas Energy,* 2008 OK 94, ¶ 19, 234 P.3d 938.

10. *In re Assessment of Personal Property Taxes Against Missouri Gas Energy,* see note 9, supra.

11. *In re Assessment of Personal Property Taxes Against Missouri Gas Energy,* see note 9, supra.

12. *Austin, Nichols & Co. v. Oklahoma County Bd. of Tax Roll Corrections,* see note 8, supra.

amendments do not "raise" or increase the tax burden. Accordingly, we must conclude that to the extent that *Anderson v. Ritterbusch*, 1908 OK 250, 98 P. 1002, 22 Okla. 761 implies otherwise, it is expressly overruled.

## CONCLUSION

¶ 18 We hold that Senate Bill 1246 is not unconstitutional. The popular vote/super-majority approvals in art. 5, § 33 of the Okla. Const. do not apply to the 2014 statutory enactment that reduced State income tax rates. To hold otherwise would defeat the evident object and purpose of the 1992 amendment to art. 5, § 33. To the extent *Anderson v. Ritterbusch*, 1908 OK 250, 98 P. 1002, 22 Okla. 761 implies otherwise, it is expressly overruled.

**ORIGINAL JURISDICTION ASSUMED. DECLARATORY RELIEF DENIED. SENATE BILL 1246 IS NOT UNCONSTITUTIONAL.**

REIF, V.C.J., KAUGER, EDMONDSON, TAYLOR, COMBS, GURICH, JJ., concur.

WINCHESTER, J., concurs in result.

COLBERT, C.J., WATT, J., not voting.