OSCN Found Document:Question Submitted by: Mike Jackson, Executive Director, Legislative Office of Fiscal Transparency

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 Question Submitted by: Mike Jackson, Executive Director, Legislative Office of Fiscal Transparency
2023 OK AG 5
Decided: 05/10/2023
Oklahoma Attorney General Opinions

Cite as: 2023 OK AG 5, __ __

 
¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. May the Oklahoma Legislature authorize the use of funds from the Tobacco Settlement Endowment Trust Fund for uses not specifically referenced in article X, section 40 of the Oklahoma Constitution?
2. May the Oklahoma Legislature express a legislative preference for, or recommend, the use of funds from the Tobacco Settlement Endowment Trust Fund for uses not specifically referenced in article X, section 40 of the Oklahoma Constitution?
3. Do expenditures to benefit Oklahoma's Medicaid program fall within the permissible purposes of article X, section 40 of the Oklahoma Constitution?
I.
BACKGROUND
A. Tobacco Endowment Settlement Trust
¶1 In 1998, attorneys general for 52 states and territories, including Oklahoma, entered into the Master Settlement Agreement ("MSA") with some of the largest tobacco companies in the United States to settle state lawsuits seeking to recover billions of dollars in costs associated with treating tobacco-related illnesses. See MSA (executed Nov. 23, 1998).[1] Among other duties, the MSA requires tobacco manufacturers to make annual payments to the settling states in perpetuity. In 2000, the citizens of Oklahoma approved OKLA. CONST. art. X, § 40, which established the Tobacco Settlement Endowment Trust Fund ("Trust Fund") from a percentage of the payments received by Oklahoma under the MSA. The Legislature referred the constitutional amendment to the citizens of Oklahoma through State Question No. 692, Legislative Referendum No. 320, which passed with 68.81% of the vote. See HB 2022, 2000 Okla. Sess. Laws ch. 249; Exec. Proclamation (Dec. 5, 2000).[2]
¶2 Article X, section 40 creates a Board of Investors and a Board of Directors and prescribes certain duties for each. See OKLA. CONST. art. X, § 40(C--D). This provision explains that "[e]ach fiscal year, the Board of Directors may expend the amount of earnings which actually accrued to the trust fund during the preceding fiscal year[,]" and that "[t]he Board shall direct specific expenditures to be made for the purposes specified in subsection E of this section." Id. § 40(F). In sum, the Constitution specifically grants the Board of Directors, and only the Board of Directors, the authority to direct specific expenditures from the earnings of the Trust Fund, so long as those expenditures are made for the purposes specified in subsection E. Those purposes include "[p]rograms . . . designed to maintain or improve the health of Oklahomans or to enhance the provision of health care services to Oklahomans, with particular emphasis on such programs for children[]" and "[p]rograms designed to enhance the health and well-being of senior adults . . . ." Id. § 40(E)(3), (5).
¶3 Consistent with the plain reading of article X, section 40, in 2007 the Office of the Oklahoma Attorney General issued the following opinion:
[T]he Board of Directors of the Trust Fund is responsible for directing the expenditure of earnings from the Trust Fund. Any legislation which directs expenditures to be made from the Trust Fund for specific programs or purposes or which directs the Board of Directors to make expenditures from the Trust Fund for specific programs or purposes would be inconsistent with the Oklahoma Constitution.
2007 OK AG 30, ¶ 10 ( "2007 Opinion"). The 2007 Opinion is directly relevant to the question presented and is incorporated by reference.
B. Medicaid
¶4 Medicaid is a cooperative federal-state program that provides state governments federal grants to assist states in paying for medical services for low-income citizens including pregnant women, children, the elderly, and persons with disabilities, as well as those with certain qualifying conditions. See, e.g., 42 U.S.C. §§ 1396--1396w-7; 56 O.S.2021, §§ 4002.1--4002.14; 56 O.S.2021, §§ 1011.1--1011.15. The purpose of Medicaid is "to provide 'health care to persons who cannot afford such care.'" Morris v. Oklahoma Dep't of Hum. Servs., 685 F.3d 925, 928 (10th Cir. 2012) (citation omitted).
II.
DISCUSSION
¶5 Both the plain language of article X, section 40 and the 2007 Opinion confirm that the Board of Directors, not the Legislature, is responsible for approving or directing funds for specific expenditures of Trust Fund earnings. At the same time, the Oklahoma Constitution does not expressly preclude the Legislature from expressing a legislative preference or recommending some course of action. While such legislation would not bind the Board of Directors or the judicial branch, it is not necessarily impermissible. Finally, the purpose of Medicaid, a cooperative state and federal program that provides medical assistance to the poor, is consistent with the broad purpose of article X, section 40(E), which includes programs designed to maintain, improve, or enhance the health of Oklahomans or health care services, with a particular emphasis on children's programs.
¶6 Therefore, for the reasons set forth below, this Office concludes that (1) the Oklahoma Legislature may not authorize or formally approve the use of funds from the Trust Fund for uses not specifically referenced in article X, section 40, (2) the Oklahoma Legislature may enact legislation expressing a preference, or recommending, that the Board of Directors expend earnings of the Trust Fund for certain uses, but such legislation has no legal force or effect, and (3) expenditures to benefit Oklahoma's Medicaid program would fall within the permissible purposes of article X, section 40 of the Oklahoma Constitution.
A. May the Oklahoma Legislature authorize the use of funds from the Tobacco Settlement Endowment Trust Fund for uses not specifically referenced in article X, section 40 of the Oklahoma Constitution?
¶7 To answer your first question, it is necessary to define the term "authorize." Black's Law Dictionary defines authorize as "[t]o give legal authority; to empower" or "[t]o formally approve; to sanction . . . ." Authorize, BLACK'S LAW DICTIONARY (11th ed. 2019). Under these definitions, "to authorize" implies some underlying legal authority over the relevant expenditure or transaction. Yet, article X, section 40 does not leave the Legislature any role in the specific expenditure of earnings from the Trust Fund. Rather, this authority lies solely with the Board of Directors. See OKLA. CONST. art. X, § 40 (F) (explaining "the Board of Directors may expend the amount of earnings which actually accrued to the trust fund" and "[t]he Board shall direct specific expenditures"). See also 2007 OK AG 30, ¶ 4.
¶8 The 2007 Opinion directly addresses this issue, and indeed it resolves this question by concluding that the "positive delegation of power by the Constitution to the Board of Directors implies a negation of its exercise by any other officer or department." 2007 OK AG 30, ¶ 8. The 2007 Opinion explains that because "[t]he Constitution specifically grants the Board of Directors the power to direct the expenditures to be made from the earnings of the Trust Fund[,] . . . [l]egislation which would grant the Legislature the power to direct the expenditures from the Trust Fund or which would allow the Legislature to direct the Board of Directors to spend the earnings from the Trust Fund for specific programs or purposes, would be inconsistent with the Constitution . . . ." Id.. As the 2007 Opinion clarifies: "[u]nder the unambiguous terms of the Constitution, it is the responsibility of the Board of Directors rather than the Legislature to determine the expenditures to be made from the Trust Fund earnings." Id. ¶ 9. In sum, the Legislature plays no role in authorizing, approving, or directing funds for specific expenditures of Trust Fund earnings under article X, section 40.
¶9 If there were any ambiguity as to the meaning of article X, section 40, the official ballot title, which "is a contemporaneous construction of the constitutional amendment[,] . . . weighs heavily in determining its meaning." Fent v. Fallin, 2014 OK 105, ¶ 11, 345 P.3d 1113, 1116--17. The official ballot title for State Question No. 692 also suggests that the sole discretion to direct expenditures from the earnings of the Trust Fund is vested in the Board of Directors. Specifically, the ballot title says nothing about the Legislature having a role. Instead, it states: "The earnings from the trust fund may be expended by the Board of Directors for certain purposes." Accordingly, this office concludes that the Oklahoma Legislature may not authorize or formally approve the use of funds from the Trust Fund for uses not specifically referenced in article X, section 40, as it invades the power of the Board of Directors.[3]
B. May the Oklahoma Legislature express a legislative preference for, or recommend, the use of funds from the Tobacco Settlement Endowment Trust Fund for uses not specifically referenced in article X, section 40 of the Oklahoma Constitution?
¶10 The Oklahoma Constitution does not expressly preclude the Legislature from expressing a preference or encouraging some course of action. For example, the Constitution plainly provides that "[t]he authority of the Legislature shall extend to all rightful subjects of legislation, and any specific grant of authority in this Constitution, upon any subject whatsoever, shall not work a restriction, limitation, or exclusion of such authority upon the same or any other subject or subjects whatsoever." OKLA. CONST. art. V, § 36. This broad grant of authority vests within the Legislature "the power and authority to pass legislation on any subject not withheld by the Constitution of this State or the Federal Constitution." State ex rel. Okla. Tax Comm'n v. Daxon, 1980 OK 28, ¶ 16, 607 P.2d 683, 687. Nevertheless, when the Legislature expresses a preference, it is just that--an expressed preference. Therefore, it does not have any real legal force or effect, especially when the power to act on that preference has been expressly bestowed elsewhere. Stated another way, aspirational statements of the Legislature's policy preferences are not legal mandates and do not establish any affirmative legal duty.[4] As a result, the Board of Directors is not bound by such a legislative enactment identifying the legislature's preference for use of the Trust Fund.
¶11 Similarly, a legislative enactment attempting to declare or deem a specific expenditure constitutionally permissible does not bind the judicial branch. While the Legislature is empowered to enact laws necessary to implement or carry into effect the Constitution, see OKLA. CONST. art. 5, § 45; OKLA. CONST. art. X, § 40(G), it is the well-established province of the judicial branch, not the legislative branch, to conclusively interpret the Oklahoma Constitution. See Institute for Responsible Alcohol Pol'y, 2020 OK 5, ¶ 11, 457 P.3d at 1055 (explaining that the Supreme Court of Oklahoma "is the final interpreter of Oklahoma's laws, including the Oklahoma Constitution"); see also Wyatt-Doyle & Butler Eng'rs, Inc. v. City of Eufaula, 2000 OK 74, ¶ 8, 13 P.3d 474, 477 (because the Supreme Court of Oklahoma "'is the Protector of our Constitution[,]' . . .[n]o statute can remove this duty and place the ultimate determination of a constitutional issue in an arbitrator"); Boswell v. State, 1937 OK 727, ¶ 16, 74 P.2d 940, 943 (explaining that a recital within a legislative enactment "is in no respect conclusive" on constitutionality, as the question of whether an action is "contrary to the constitutional provisions is a judicial and not a legislative question"). In sum, the judicial branch is not bound by a legislative enactment declaring that a specific expenditure is permitted under the Constitution.[5]
¶12 As a result, this office concludes that the Legislature may enact legislation expressing a preference that the Board of Directors expend earnings of the Trust Fund for certain uses not specifically referenced in OKLA. CONST. art. X, § 40, but such legislation has no legal force or effect. Furthermore, the Oklahoma Supreme Court is the final arbiter of whether those uses are in fact consistent with the Oklahoma Constitution.
C. Do expenditures to benefit Oklahoma's Medicaid program fall within the permissible purposes of article X, section 40 of the Oklahoma Constitution?
¶13 In construing the Oklahoma Constitution, the primary objective "is to give effect to the framers' intent, as well as the people adopting it." Institute for Responsible Alcohol Pol'y, 2020 OK 5, ¶ 12, 457 P.3d at 1055. Any interpretive exercise begins first with the text of the constitutional provision, which is binding if unambiguous. Id. "Words used in a constitutional provision and an accompanying ballot title are to be construed in a way most familiar to ordinary people who voted on the measure." Fent, 2014 OK 105, ¶ 12, 345 P.3d at 1117. The words of a constitutional provision are therefore construed as having "their obvious meaning[,]" unless the words "denote that they are used in a technical sense . . . ." Id.
¶14 Here, article X, section 40 defines the purposes for which earnings of the Trust Fund may be expended as including "[p]rograms other than those specified in paragraph 1 of this subsection designed to maintain or improve the health of Oklahomans or to enhance the provision of health care services to Oklahomans, with particular emphasis on such programs for children." OKLA. CONST. art. X, § 40(E)(3). The ballot title summarizes those purposes as including "tobacco prevention and cessation programs, health care, education, other children's services and programs for senior adults." HB 2022, 2000 Okla. Sess. Laws ch. 249, § 2. Therefore, the plain language of article X, section 40(E)(3) appears purposefully broad. The Board of Directors is granted wide discretion in spending Trust Fund earnings to maintain, improve, or enhance health and health care services to Oklahoma citizens.
¶15 In addition, "a constitutional amendment should be construed in the light of its purpose and given a practical interpretation so that the manifest purpose of the framers and people who adopted it may be carried out." Austin, Nichols & Co., Inc. v. Oklahoma Cnty. Bd. of Tax-Roll Corr., 1978 OK 65, ¶ 16, 578 P.2d 1200, 1203. Here, the purpose of article X, section 40 is to provide for the means of depositing and distributing the money received by the State of Oklahoma pursuant to settlements with tobacco companies, particularly the 1998 MSA that provided the basis for the constitutional amendment. See OKLA. CONST. art. X, § 40(A), (B). The terms of the MSA are therefore relevant to construction of article X, section 40.
¶16 The MSA confirms the broad purpose espoused in article X, section 40(E)(3). The MSA recites, for instance, that the settlement was prompted after the settling states commenced litigation seeking "to further the Settling States' policies regarding public health, including policies adopted to achieve a significant reduction in smoking by Youth . . . ." MSA, p. 1 (executed Nov. 23, 1998).
[6] The settling states further explained that entering into the MSA was "necessary in order to further the Settling States' policies designed to reduce Youth smoking, to promote the public health and to secure monetary payments to the Settling State." Id. 2; see also id. (explaining that settling the states' respective lawsuits provides "significant funding for the advancement of public health" and "the implementation of important tobacco-related public health measures").
¶17 Although Medicaid is not a program specifically mentioned in either article X, section 40 of the Oklahoma Constitution or the MSA, the program is designed and administered to maintain, enhance, and improve the health of Oklahomans. See OKLA. CONST. art. X, § 40(E)(3). Medicaid "is a cooperative program of the state and federal governments that provides medical assistance for the poor." Pharmcare Okla., Inc. v. State Health Care Auth., 2007 OK CIV APP 5, ¶ 12, 152 P.3d 267, 269; see also Soskin v. Reinertson, 353 F.3d 1242, 1244 (10th Cir. 2004) ("Medicaid is a joint state and federal medical assistance program for the poor, disabled, and others in need."); Blum v. Yaretsky, 457 U.S. 991, 993--94 (1982) ("Congress established the Medicaid program . . . to provide federal financial assistance to States that choose to reimburse certain medical costs incurred by the poor."). In fact, Oklahoma law administering the state's Medicaid program expressly declares it is "designed to achieve the . . . goal[]" of "[i]mprov[ing] health outcomes for Medicaid members and the state as a whole[,]" among other things. 56 O.S.2021, § 4002.1a. The purpose of Oklahoma's Medicaid program therefore aligns squarely with the purpose of expenditures from the Trust Fund.
¶18 By presumptively covering children under 19 years of age, see 42 U.S.C. § 1396r-1a, Medicaid also places particular emphasis on providing medical services to children, consistent with article X, section 40(E)(3). It is therefore the opinion of the Attorney General that expenditures to benefit Oklahoma's Medicaid program fall within the permissible purposes of article X, section 40 of the Oklahoma Constitution.
¶19 It is, therefore, the official Opinion of the Attorney General that:

1. The Oklahoma Legislature may not authorize or formally approve the use of funds from the Trust Fund for uses not specifically referenced in article X, section 40, because the Legislature cannot direct the Board of Directors to make expenditures from the Trust Fund for specific programs or purposes.
2. The Oklahoma Legislature may enact legislation expressing a preference, or recommending, that the Board of Directors of the Tobacco Settlement Endowment Trust Fund expend earnings to the Trust Fund for certain uses not specifically referenced in OKLA. CONST. art. X, § 40. Notwithstanding, such legislation has no legal force or effect because it is not binding on (1) the Board of Directors, which has ultimate authority to make expenditures from the Trust Fund, or (2) the judicial branch, which has ultimate authority on questions of constitutional interpretation.
3. Expenditures to benefit Oklahoma's Medicaid program, a program designed to provide medical assistance to the poor, specifically including children, fall within the permissible purposes of article X, section 40 of the Oklahoma Constitution.

GENTNER DRUMMOND
ATTORNEY GENERAL OF OKLAHOMA
AUDREY A. WEAVER
ASSISTANT SOLICITOR GENERAL
FOOTNOTES
[1] Master Settlement Agreement (National Association of Attorneys General, January 2019 Printing), https://naagweb.wpenginepowered.com/wp-content/uploads/2020/09/2019-01-MSA-and-Exhibits-Final.pdf (last visited on May 2, 2023).
[2] Oklahoma Secretary of State, State Question 692, https://www.sos.ok.gov/documents/questions/692.pdf (last visited May 2, 2023).
[3] Along those lines, simple legislative enactments cannot override or amend the Oklahoma Constitution. See Institute for Responsible Alcohol Pol'y v. State ex rel. Alcoholic Beverage Laws Enf't Comm'n, 2020 OK 5, ¶ 18, 457 P.3d 1050, 1057 ("The Oklahoma Constitution prevails over a conflicting statute . . . ."); cf. Okla. Const. art. XXIV, § 1 (describing the legislative process to amend the Oklahoma Constitution).
[4] As one commentator from the U.K. describes it: "[l]egislation which is non-law bearing hovers on the boundary between law, politics, and morality . . . . We may call legislation . . . 'declaratory' when it purports to say what the law is (often to hide or suppress a serious disagreement on the matter), 'aspirational' where is embodies a hope, and 'politically rhetorical' when it merely emphasizes that the political elite favours certain kinds of behaviour or a particular view on a contested issue." David Feldman, Legislation Which Bears No Law, 37 Statute L. Rev. 212, 214 (2016).
[5] Legislation attempting to pass on the constitutionality of a law could further implicate separation of powers. Other state supreme courts have addressed the legislature's ability to interpret the constitution more directly than the Oklahoma Supreme Court, with some declining to grant any deference or weight to the legislative pronouncement and some striking down the legislative pronouncement as unconstitutional. See, e.g., Mesivtah Eitz Chaim of Bobov, Inc. v. Pike Cnty. Bd. of Assessment Appeals, 44 A.3d 3, 7 (Pa. 2012) ("While the General Assembly necessarily must attempt to interpret the Constitution in carrying out its duties, the judiciary is not bound to the 'legislative judgment concerning the proper interpretation of constitutional terms.'" (citation omitted)); Luebbers v. Money Store, Inc., 40 S.W.3d 745, 749 (Ark. 2001) ("An act of the General Assembly violates the separation-of-powers doctrine when it deprives the courts of the power to decide a judicial question."); Richardson v. Hare, 160 N.W.2d 883, 886 (Mich. 1968) (rejecting "the proposition that it is competent for the legislature to take a term or language in the Constitution, interpret it and make that legislative interpretation the law[,]" concluding that a state law attempting the same was "beyond the power of the legislature to enact and is, hence, unconstitutional").
[6] Master Settlement Agreement infra.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions

 
Cite
Name
Level

 
2007 OK AG 30, 
Question Submitted by: Mr. Kenneth D. Rowe, Chair, Board of Directors, Oklahoma Tobacco Settlement Endowment Trust
Discussed at Length

Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2007 OK CIV APP 5, 152 P.3d 267, 
PHARMCARE OKLAHOMA, INC. v. STATE OF OKLAHOMA HEALTH CARE AUTHORITY
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2000 OK 74, 13 P.3d 474, 71 OBJ 2580, 
WYATT-DOYLE & BUTLER ENGINEERS, INC. v. CITY OF EUFAULA
Discussed

 
1937 OK 727, 74 P.2d 940, 181 Okla. 435, 
BOSWELL v. STATE
Discussed

 
1980 OK 28, 607 P.2d 683, 
State ex rel. Oklahoma Tax Commission v. Daxon
Discussed

 
2014 OK 105, 345 P.3d 1113, 
FENT v. FALLIN
Discussed at Length

 
1978 OK 65, 578 P.2d 1200, 
AUSTIN, NICHOLS & CO. v. OKLAHOMA COUNTY BD. OF TAX-ROLL CORRECTIONS
Discussed

 
2020 OK 5, 457 P.3d 1050, 
THE INSTITUTE FOR RESPONSIBLE ALCOHOL POLICY v. STATE ex rel. ALCOHOLIC BEVERAGE LAWS ENFORCEMENT COMM.
Discussed at Length

Title 56. Poor Persons

 
Cite
Name
Level

 
56 O.S. 1011.1, 
Short Title
Cited

 
56 O.S. 4002.1, 
Short Title
Cited

 
56 O.S. 4002.1a, 
Intent
Cited